SANJIV N. SINGH, A PROFESSIONAL LAW CORPORATION
Sanjiv N. Singh, Esq. (SBN 193525)
1650 S. Amphlett Blvd. Suite 220
San Mateo, CA 94402
Phone: (650) 389-2255
Email: ssingh@sanjivnsingh.com

INDRAJANA LAW GROUP, A PROFESSIONAL LAW CORPORATION
Michael B. Indrajana, Esq. (SBN 258329)
1650 S. Amphlett Blvd. Suite 220
San Mateo, CA 94402
Phone: (650) 597-0928
Email: michael@indrajana.com

Attorneys for Plaintiff FOUNDER INSTITUTE INCORPORATED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FOUNDER INSTITUTE INCORPORATED, a Delaware Corporation,**<br><br>    Plaintiff,<br><br>**v.**<br><br>**HARTFORD FINANCIAL SERVICES GROUP,** a corporation doing business in California**; SENTINEL INSURANCE COMPANY, LIMITED,** a corporation doing business in California; and **DOES 1 through 50,** inclusive**,**<br><br>    Defendants. | **Case No.: 3:20-cv-04466-VC**<br><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT SENTINEL INSURANCE COMPANY, LIMITED'S MOTION TO DISMISS**<br><br>**[Fed. R. Civ. Pro. 12(b)(6)]**<br><br>Date:　　　 January 21, 2021<br>Time:　　　 10:00 a.m.<br>Location:　　 450 Golden Gate Avenue<br>　　　　　　 San Francisco, CA 94102<br>　　　　　　 Courtroom 4 – 17th floor<br>Judge:　　　 Hon. Vince Chhabria |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I.      INTRODUCTION .............................................................................................................. 1

II.     BACKGROUND ............................................................................................................... 2

   A.   Brief Procedural History. ............................................................................................ 2

   B.   Statement of Facts and Specific Rebuttals. ................................................................ 2

      1.   Contrary to the Court's Suggestion, Plaintiff Suffered Actual Loss Well Beyond the Effects of a General Economic Slowdown. ............................................................................... 3

      2.   New Allegations in the TAC Amplify and Expand on The Distinction Between Human Droplets and Virus Particles, And the Relevance of The Distinction to COVID-19 Ordinances. ....... 3

      3.   The TAC incorporates numerous common allegations from the *Mostre Exhibits LLC* matter. .. 4

III.    LEGAL STANDARD FOR RULE 12(B)(6) ANALYSIS OF COVERAGE CLAIMS ................ 5

   A.   The Court Should Accept All of the Allegations Made in the TAC as True, and Construe the Pleadings in the Light Most Favorable to Plaintiff, and Alternatively, Grant Liberal Leave for Plaintiff to Amend the Complaint. ........................................................................................ 5

   B.   Judicially Noticed Documents Do Not Trump Pleadings, and the Court Must Still, for 12(b)(6) Analysis, Construe Pleadings in the Light Most Favorable to Plaintiff. ................................. 6

   C.   California Insurance Contract Interpretation Requires the Court to Interpret the Policy Language Broadly to Afford the Greatest Possible Protection to the Insured and to Interpret Exclusions Narrowly against the Insurer. ............................................................................. 7

IV.    ARGUMENT. ................................................................................................................... 8

   A.   Hartford's Decision to Answer *Mostre Exhibits LLC* while Gutting Founder is Inconsistent with the Underlying Policies of *Twombly* and *Iqbal*. ............................................................. 9

   B.   There is no Binding Authority Requiring Dismissal of the Founder TAC, and Founder's Allegations are Novel and Scientifically Supported. ...................................................... 9

   C.   Plaintiff's Allegations of Human Droplets as a Covered Cause of Loss is Facially Plausible Under *Twombly* and *Iqbal*. ............................................................................................ 11

PLAINTIFF'S OPPOSITION TO DEFENDANT SENTINEL INSURANCE COMPANY, LIMITED'S MOTION TO DISMISS
CASE NO.: 3:20-CV-04466-VC

1.   The Distinction Between Human Droplets and Virus Particles Have Been Plead in Sufficient Detail to Meet the Facially Plausible Standard of *Twombly* and *Iqbal,* and this Distinction is Novel and Distinguishable from Other COVID-19 Case Decisions. ......................................................... 11

2.   Hartford's Policy's "Risk of Physical Loss" Requirement as Plead Covers Human Droplets. . 12

3.   The Legal Standard for Interpreting the Direct Physical Loss Requirement Favors Founder ... 13

4.   Applying Applicable Law, Plaintiff Satisfies the Direct Physical Loss Requirements of the Hartford Policy. ....................................................................................................................... 16

5.   Hartford's Other Cited Authorities Are Inapposite, Distinguishable, and Should Not Be Relied Upon to Grant this Premature Rule 12(b)(6) Motion. .............................................................. 17

D.   Hartford's Virus Exclusion Is Not A Blanket Exclusion, Is Deficient in Construction, And Does Not Cover Droplets. ....................................................................................................... 18

E.   Hartford's Interpretation of Its Limited Virus Coverage to Exclude Coverage Renders the Limited Coverage Illusory. ..................................................................................................... 19

F.   There is a Competing Covered Cause of Loss (in the Form of Droplets) that Must be Analyzed Under California's Concurrent Causation Doctrine as a Triable Issue of Fact. ..................................... 21

G.   Plaintiff Has Sufficiently Alleged Facts That Trigger Civil Authority Coverage by Alleging Human Droplets, With or Without Virus Particles, as a Covered Cause of Loss. ............................... 22

H.   Recent COVID-19 Decisions are Consistent with Founder's Position and Distinguishable from Founder's Allegations about Human Droplets. ............................................................................... 23

I.   Plaintiff Has Sufficiently Pled Factual Allegations for Each of Its Causes of Action to Survive the 12(b)(6) Motion. ................................................................................................................ 23

1.   Counts 1 Through 4 – Breach of Contract and Declaratory Relief. ........................................... 24

2.   Counts 5 – Unjust Enrichment. ................................................................................................. 24

3.   Counts 6 and 7 – Violation of Cal. Bus. & Prof. Code § 17200 (UCL) and Injunctive Relief Under § 17200. ......................................................................................................................... 24

V.   CONCLUSION ........................................................................................................................ 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aberin v. Am. Honda Motor Co., Inc.*, 2018 U.S. Dist. LEXIS 49731 (N.D. Cal. Mar. 26, 2018) -------- 24

*Adkins v. Comcast Corp.*, 2017 U.S. Dist. LEXIS 137881 (N.D. Cal. Aug. 1, 2017) ---------------------- 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ---------------------------------------------------------------------- 6, 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ------------------------------------------------------ 6, 8

*Diesel Barbershop, LLC. v. State Farm Lloyds,* 2020 WL 4724305 (W.D. Tex. Aug 13, 2020) ---------- 11

*Founder Institute Incorporated v. Hartford Fire Insurance Company, et al.*, Case No. 3:20-cv-04466-
VC (N.D. Cal.,  Oct. 15, 2020) ------------------------------------------------------------------------------------ 7

*Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60 (1992) -------------------------------------------------- 24

*Gompper v. VISX, Inc.*, 298 F.3d 893 (9th Cir. 2002) -------------------------------------------------------- 6

*HealthNOW Medical Center, Inc. v. State Farm Gen. Ins. Co.,* Case No. 4:20-cv-04340-HSG (N.D. Cal.,
Dec. 10, 2020) ------------------------------------------------------------------------------------------------ 8, 10

*In re Gilead Sci. Secs. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ----------------------------------------------- 6

*In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (Cal. Ct. App. 2009) ------------------------------------ 24

*Johnson v. Fed. Home Loan Mortg. Corp.,* 793 F.3d 1005 (9th Cir. 2015) ------------------------------- 6

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) -------------------------------------- 7

*Korea Supply Co. v. Lockheed Martin Corp,* 29 Cal. 4th 1134 (2003) ----------------------------------- 24

*Mama Jo's, Inc. v. Sparta Insurance Co.*, No 18-12887, 2020 WL 4782369 (11th Cir. Aug. 18, 2020)  17

*Manpower Inc. v. Ins. Co. of the State of Pa.*, No. 08C0085, 2009 WL 3738099 (E.D. Wis. Nov. 3,
2009) ----------------------------------------------------------------------------------------------------------------- 14

*Manzarek v. Marine*, 519 F.3d 1025 (9th Cir. 2008)----------------------------------------------------- 6, 7, 8, 20

*Montrose Chem Corp. v. Superior Court*, 861 P.2d 1153, 1160 (1993)----------------------------------- 8

*Mortar & Pestle Corp. d/b/a Olea Restaurant v. Atain Specialty Insurance Company a/k/a Atain
Insurance Company,* Case No. 3:20-cv-03461-MMC (N. D. Cal., May 21, 2020)----------------------- 7

*Mostre Exhibits LLC. v. Sentinel Ins. Co.*, Case No. 3:20-cv-01332 (S.D. Cal. Jul. 14, 2020) ------- 1, 4, 9

*Mudpie, Inc. v. Travelers Casualty Insurance Company of America,* 20-cv-03213-JST, 2020 WL 5525171 (N.D. Cal. Sept 14, 2020) ------------------------------------------------------------------ 14

*Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1 (W.Va. 1998) ------------------------------------ 14

*Nat'l Org. for Women v. Scheidler*, 510 U.S. 249 (1994) ------------------------------------------------ 6

*Polich v. Burlington N., Inc.*, 942 F.2d 1467 (9th Cir. 1991) ------------------------------------------ 6

*Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal.4th 758 (2001) ---------------------------------------------- 7

*Scottsdale Ins. Co. v. Hudson Specialty Ins. Co.*, No. 15-cv-02896-HSG (N.D. Cal. Mar. 25, 2016) ----- 6

*Shade Foods, Inc., v. Innovative Products Sales*, 78 Cal.App.4th 847 (2000) -------------------------- 8

*Social Life Magazine, Inc. v. Sentinel Ins. Co. Lmtd.*, Case No. 1:20-cv-03311 (S. D. N. Y., May 14, 2020) ------------------------------------------------------------------------------------------------------ 7, 11

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ---------------------------------------- 6

*Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:17-cv-04908-AB-KSx), 2018 WL 3829767 -------------------------------------------------------------------------------------------- 14

*Turek Enterprises, Inc. v. State Farm Mutual Automobile Insurance Co.*, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020) ------------------------------------------------------------------------------------------ 11

*Urogynecology Specialists of Florida v. Sentinel Ins. Co. Ltd.*, 2020 WL5939172 (M.D. Fla. Sept. 24, 2020) --------------------------------------------------------------------------------------------------- 10

*Vicuña v. Alexia Foods, Inc.*, 2012 U.S. Dist. LEXIS 59408 (N.D. Cal. April 27, 2012) ----------------- 25

**STATE CASES**

*Bank of the W. v. Superior Court,* 2 Cal. 4th 1254, 10 Cal.Rptr.2d 538 P.2d 545 (1992) ----------------- 15

*Borg v. Transamerica Ins. Co.,* 47 Cal. App. 4th 448, 54 Cal. Rptr. 2d 811 (1996) ----------------------- 15

*Garvey v. State Farm,* 48 Cal.3d 395 (1989) -------------------------------------------------------------- 21

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, 20-258-CB-C30 (Mich. Cir. Ct., Ingham City) -------------- 11

*Hendrickson v. Zurich American Ins. Co. of Ill.,* 72 Cal. App. 4th 1084, (1999) ---------------------------- 15

*Julian v. Hartford Underwriter Ins. Co.*, 35 C4th 747 (2005) -------------------------------------------- 22

*MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205 (2003) ------------------------------------------------------ 7

*Mastellone v. Lightning Rod Mutual Insurance Co.,* 884 N.E.2d 1130 (Ohio App. 2008)------------------17

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766 (2010)------13

*Reserve Ins. Co. v. Pisciotta,* 30 Cal.3d 800 (1982)---------------------------------------------- 8, 13, 21

*Sabella v. Wisler,* 59 Cal.2d 21 (1963)--------------------------------------------------------21

*Stamm Theatres, Inc., v. Hartford Casualty Ins. Co,* 93 Cal.App.4th 531 (2001) ----------------------------- 8

*Thee Sombrero, Inc. v. Scottsdale Ins. Co.*, 28 Cal.App.5th 729 (Cal. Ct. App. 2018) ---------------------15

*Western Fire Insurance Co. v. First Presbyterian Church,* 165 Colo. 34, 437 P.2d 52 (1968)------------14

## <u>STATUTES</u>

Cal. Civ. Code § 1636 -------------------------------------------------------------------------------- 7

Cal. Ins. Code § 532 --------------------------------------------------------------------------------21

## <u>RULES</u>

Fed. R. Civ. P. Rule 12(b)(6) ------------------------------------------------------------------------ 6

# I.   INTRODUCTION

As the end of 2020 approaches, a year which has been one of the most tumultuous years in modern human history, the COVID-19 pandemic has been a juggernaut force that has decimated the lives and the livelihoods of millions of Americans. Indeed, the United States is experiencing an unprecedented, overwhelming surge of coronavirus cases, with the number of cases and deaths breaking records for several consecutive days in December 2020.[1] Throughout the state of California, both State and County governments are issuing new Stay-in-Place (SIP) orders similar to the ones issued at the beginning of the pandemic, forcing people and businesses into another round of stay at home restrictions and closures like the one enacted earlier in the Spring of 2020.[2]

Since the last hearing in this matter, Plaintiffs have learned that Hartford's decision to seek dismissal under Rule 12(b)(6) of Plaintiff's Third Amended Complaint ("TAC") is contradictory and inconsistent with its position in a virtually identical California case involving similar identical policy coverage forms.[3] When asked directly about the issue and as Plaintiffs evaluated whether to amend its Second Amended Complaint ("SAC"), appeal, or seek a motion for reconsideration of the prior decision of this Court, Hartford ignored Plaintiffs' inquiry and has not provided explanation to date. Declaration of Michael B. Indrajana In Support of This Opposition (the "Indrajana Decl.") at ¶ 2, Exhibit A.

Against this backdrop, Plaintiffs' filed a Third Amended Complaint. The Third Amended Complaints sets out to: (i) expand the scope of the allegations highlighting the distinction between virus particles and droplets to persuade this Court that the distinction is legally significant and not "artful pleading" or "frivolous"[4] (ii) highlight the fact that the critical coverage dispute at issue in this matter

---

[1] Watts, Amanda. "US Surpasses 300,000 Covid-19 Deaths." CNN.com, 14 Dec. 2020. https://www.cnn.com/world/live-news/coronavirus-pandemic-vaccine-updates-12-14-20/h_46ecfd2eed871c64b4c72355abe8f08d – Last Accessed Dec. 15, 2020.

[2] County of Santa Clara Public Health Department Stay in Place Order. March 16, 2020. 03-16-20-Health-Officer-Order-to-Shelter-in-Place.pdf (sccgov.org) – Last Accessed Dec. 15, 2020.

[3] *See Mostre Exhibits LLC. v. Sentinel Ins. Co.*, Case No. 3:20-cv-01332 (S.D. Cal. Jul. 14, 2020)

[4] The Court and Defendants can disagree with the legal significance of this distinction ultimately, and maybe experts would ultimately battle on this point fiercely, but to characterize the arguments at the pleading stage as frivolous and contorted seems unduly harsh, is inconsistent with the scientific evidence clearly distinguishing particles from droplets, and trivializes individuals who work in healthcare where the distinction is anything but frivolous. The distinction is what allows Dr. Singh, who is lead counsel in

PLAINTIFF'S OPPOSITION TO DEFENDANT SENTINEL INSURANCE COMPANY, LIMITED'S MOTION TO DISMISS
CASE NO.: 3:20-CV-04466-VC

occurs not in the context of a blanket virus exclusion but instead in the context of the Policy's Limited Virus Coverage Form, which should persuade the Court to give the benefit of the doubt at this stage to Plaintiff and allow concurrent causation to be vetted by experts and at the very least reach summary judgment.

In summary, the Court should exercise restraint consistent with *Iqbal* and *Twombly* and deny these 12(b)(6) motions and exercise prudence and restraint, allowing triers of facts to properly wrestle with the critical scientific and evidentiary questions present in the newly evolving area of COVID-19 law.

## II. BACKGROUND

### A. Brief Procedural History.

The procedural history of this matter through the filing of the SAC and the motion practice that ensued has been extensively outlined previously for this Court. See Plaintiff's Opposition Brief to Motion to Dismiss the Second Amended Complaint ("SAC Opposition"), ECF No.28 at 2:3-12. On October 22, 2020, the Court dismissed the SAC with leave to amend. ECF No. 40. On November 5, 2020, Plaintiff filed its Third Amended Complaint ("TAC"). ECF No. 45. On Nov. 19, 2020, Sentinel filed its Rule 12(b)(6) Motion to Dismiss ("Motion") in response to the TAC. ECF No. 46. On December 17, 2020, the parties agreed to dismiss without prejudice claims against HFSG. ECF No. 49.

### B. Statement of Facts and Specific Rebuttals.

Relevant portions of the TAC are summarized here. Like its previous Motion to Dismiss the Second Amended Complaint, Hartford's Motion fails to properly characterize the material allegations.

---

this matter, to walk into some rooms with PAPRs and to walk into other rooms with just a surgical mask. If virus particles and droplets were one in the same (or as the Court quipped pejoratively to mock Plaintiff's position at the last hearing), then the decisions made every day in Emergency Departments facing PPE shortages to vary the level of PPE protection based on risk would not make sense. The only way the decision to adopt different level of precautions in different settings is rational is if one can safely make the distinction between the virus particles, and the droplets that carry them, and safely make a distinction between rooms which have a high level of droplets without infected particles and those that have a likely higher proportion of droplets which contain infectious particles.

1     **1.  Contrary to the Court's Suggestion, Plaintiff Suffered Actual Loss Well Beyond the Effects of a General Economic Slowdown.**

Contrary to the Court's express suggestion at the hearing on the SAC, the losses incurred by the Founder Institute were not simply the result of a general economic slowdown.[5] Cutting off access to Plaintiff's physical headquarters directly prevented Plaintiff from conducting its revenue-generating business which have now been specified. TAC at 6:13-18. Founder was forced to shut down operations and reinvent its business model to convert all of their program and curriculum they have been running in person for more than ten years into an entirely virtual online platform. *Id.* at 6:18-21.

**2.  New Allegations in the TAC Amplify and Expand on The Distinction Between Human Droplets and Virus Particles, And the Relevance of The Distinction to COVID-19 Ordinances.**

Hartford incorrectly alleges and concludes in its brief that the government orders are not "a risk of direct physical loss," and that Plaintiff does not allege that "there is anything ***physically*** wrong with its Palo Alto business office." Motion at 8:9-11, Fn. 8 at 15:28. This is incorrect. Plaintiff did in fact allege physical damage and risk of direct physical loss at its property, and that said damage reduced the ability to conduct their work. TAC at 6:13-18. Specifically, Plaintiff alleged that, "the threat of the presence of possibly infected droplets, saliva, or airborne particles, constitutes physical damage to Plaintiff's property or surrounding property. *Id.* at 18:26-19:3. Said droplets, with or without virus particles, have physically changed and physically damaged Plaintiff's property or surrounding property. *Id.*

Specifically, the TAC expands significantly on the robust scientific evidence showing a clear distinction between virus particles and human droplets. First and foremost, the TAC now includes at Footnote 3 multiple scientific studies which make it at least facially plausible that there is a meaningful distinction between virus particles and human droplets. TAC at Fn. 3, 13:1-28. Second, the TAC ties these new citations to direct allegations that the droplets are completely distinguishable from virus particles, that a virus or other pathogen may travel in said droplets, and that human droplets may be the

[5] The Court stated in oral arguments at the previous motion practice the following: "But a company like you, the main loss that you suffered was not because of people's inability to come into the building. It was because the economy was shut down. Right?" Oct. 15, 2020 Hearing Transcript, ECF No.41 at 12:9-12; Plaintiff's Request for Judicial Notice, Exhibit 5.

PLAINTIFF'S OPPOSITION TO DEFENDANT SENTINEL INSURANCE COMPANY, LIMITED'S MOTION TO DISMISS
CASE NO.: 3:20-CV-04466-VC

primary cause of the damage or losses in question because the presence of droplets (only some of which might contain the virus particles) is what catalyzed the issuance of ordinances. *Id.* at ¶¶ 14:1-15:4. Third, the TAC pleads newly available governmental publications from the CDC where the government itself clearly narrates the distinct role of human droplets as distinguished from virus particles, and how this distinction has played a role in the emerging understanding of COVID-19's transmissibility and the ongoing debate on surface transmission and aerosolized transmission. *Id.* at 15:7-14.

And fourth, the TAC also now includes allegations to rebut the notion that an ordinance targeting COVID-19 must inherently target direct physical damage caused by the virus itself. TAC at 16:11-26. Specifically, the TAC now pleads a facially plausible and alternative factual interpretation of why the ordinances were issued: "In a super spreading event, most of the human droplets present would not contain the virus, but the presence of one or a few highly infectious persons (also known as superspreaders) could still result in the infection of a large number of people. Hence, the need for the initial ordinances to target all droplets and restrict widespread access to business, public areas and gathering spaces." TAC at 16:22-26; *see also* at 17:5-12, 17:13-18:13, Fn. 6, and Fn. 7.

As previously discussed, the TAC expressly pleads that Hartford's all-risk policy exclusions are silent on human droplets. TAC at 10:25-11:2. Second, the TAC realleges the significant differences in the average size and dimension of the virus particles (0.125 μm) and human droplets (5 μm), and other significant physical differences. *Id.* at 12:12-24. Founder's TAC is grounded by pleadings expressly relying on reasoned scientific evidence from credible sources, including the WHO, CDC, NIMH, NCBI, PNAS, and other peer-reviewed scientific publication sources. *Id.* at Fn. 2-8.

### 3. The TAC incorporates numerous common allegations from the *Mostre Exhibits LLC* matter.

To ensure that this Court and Defendants gave proper consideration to the Rule 12(b)(6) issues and to plead all relevant facts which would require Hartford to answer rather than launch another Rule 12(b)(6) attack, Plaintiff reached out to Hartford's counsel to ask why it had answered the *Mostre Exhibits LLC v. Sentinel Insurance Company, Limited* complaint but filed a motion to dismiss on Rule 12(b)(6) in the Founder matter. Indrajana Decl. at ¶ 2, Exhibit A; *see also* TAC at Footnote 1. The *Mostre Exhibits LLC* complaint has been instructive and guided Plaintiff with further relevant amendments including the following: (i) the TAC now clarifies that the actual exclusion at issue is

actually part of a Limited Coverage form where the title and declarations page makes no reference to the exclusion (*See* TAC at 22:3-23:5); (ii) the alleged exclusion appears to masquerade as a coverage endorsement (*Id.*); (iii) the TAC reminds the Court and Defendants of the numerous cases suggesting that even if the Court and Defendants do not agree intellectually (as the Court has expressed a public view that it thinks this is all just part of an economic slowdown), the TAC's pleadings on physical loss are at bare minimum facially plausible and that policies should be interpreted in their entirety (*See id.* at 23:11-24:11); (iv) just as plead in *Mostre Exhibits LLC*, the Policy here is a 137-page document of "numerous standard forms, endorsements, and special provisions that repeatedly promise coverage with one hand and then attempt to take it away with the other." (*See id.* at 24:12-25:5); (v) the TAC specifically pleads that the Policy defines "property damage" in a manner consistent with the loss plead in the TAC (*See id.* at 25:6-26:6); and (vi) the TAC pleads that the Policy is illusory (*See id.* at 26:7-27:18, 28:16-29:13).

### III. LEGAL STANDARD FOR RULE 12(B)(6) ANALYSIS OF COVERAGE CLAIMS

In analyzing Defendant's Motion, the Court should strictly adhere to the overarching Rule 12(b)(6) standards, which call for viewing the pleadings in the light most favorable to Plaintiff and allowing pleadings to move forward if they are facially plausible. Plaintiff respectfully submits that the national wave of 12(b)(6) dismissals, whether intending to or not, are inappropriately redefining that standard at a district court level and are setting an extremely dangerous precedent because Courts are bringing their own views of science into play, making qualitative statements (labeling distinctions as frivolous despite scientific evidence showing at the very least facial plausibility), and simply discounting insured's position out of hand. As such, before delving into specific arguments, it is worth reviewing first the relevant legal standards for Rule 12(b)(6) analysis and seminal California law, including guidance from the California Supreme Court, on the interpretation of insurance contracts.

### A. The Court Should Accept All of the Allegations Made in the TAC as True, and Construe the Pleadings in the Light Most Favorable to Plaintiff, and Alternatively, Grant Liberal Leave for Plaintiff to Amend the Complaint.

In the wave of Rule 12(b)(6) decisions to date on the COVID business interruption litigation, this Court and others have made numerous statements about science and physiology without reference to sources or authority, and without any expert testimony. Rule 12(b)(6) motions however, are supposed to

be about what is plead without such extreme and premature valuations by the Courts. Federal Rule of Civil Procedure Rule 12(b)(6) provides that, "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, ***accepted as true***, to state a claim to relief that is ***plausible on its face [emphasis added]***. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Johnson v. Fed. Home Loan Mortg. Corp.,* 793 F.3d 1005, 1008 (9th Cir. 2015).

Further, for 12(b)(6) analysis, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994). See *Scottsdale Ins. Co. v. Hudson Specialty Ins. Co.*, No. 15-cv-02896-HSG, at *6 (N.D. Cal. Mar. 25, 2016).

Finally, the Court should allow broad discretion for Plaintiff to amend its complaint to cure any defects in the factual allegations. *Manzarek v. Marine*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("Denial of leave to amend is reviewed for an abuse of discretion." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002). "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Id.* (quoting *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991)).

## B. Judicially Noticed Documents Do Not Trump Pleadings, and the Court Must Still, for 12(b)(6) Analysis, Construe Pleadings in the Light Most Favorable to Plaintiff.

Once again, Hartford is improperly asking the Court to disregard allegations in the TAC that are contradicted by the Policy's actual terms by relying on *In re Gilead Sci. Secs. Litig.*, 536 F.3d 1049 (9th Cir. 2008). Hartford argues that "[t]he court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), amended on other grounds, 275 F.3d 1187 (9th Cir. 2001). Motion at 4:19-25. However, this time around, Hartford specifically judicially notices the various court opinions and hearing transcripts of other COVID-19 cases across the country and urges the Court to disregard the pleadings in favor of the judicially noticed opinions and hearing transcripts, where many of the opinions and transcripts contain unsupported statements by the courts on key scientific issues of where the virus

is, how it is transmitted, and whether the distinction between virus particles and human droplets is meaningful, etc.[6] This is inappropriate and misleading. Indeed, the 9th Circuit has made it clear that while it is permissible to review judicially noticed documents for the purpose of evaluating and ruling upon a motion to dismiss, the Court cannot assume to be true disputed facts contained in the judicially noticed document. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Indeed, none of the cases cited by Hartford should be binding to the Court, because they are not binding authority in this case and statements by this Court or other courts about virus particles, the behavior of the virus, and transmissibility are disputed.

### C. California Insurance Contract Interpretation Requires the Court to Interpret the Policy Language Broadly to Afford the Greatest Possible Protection to the Insured and to Interpret Exclusions Narrowly against the Insurer.

More specific to this case and as Founder previously argued, the interpretation of insurance contracts under California law requires this Court to employ general contract interpretation principles. *Manzarek v. Marine*, 519 F.3d 1025, 1031 (9th Cir. 2008), citing *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1212 (2003); *Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal.4th 758, 110 (2001). Further, under California law and as now even more relevant in light of the express allegations in the TAC suggesting the Policy is illusory, the Court needs to give effect to the "mutual intention of the parties at the time the contract is formed. *Manzarek*, 519 F.3d at 1031; see Cal. Civ. Code § 1636. California law requires that grants of coverage be interpreted broadly to afford the greatest possible

---

[6] *See Founder Institute Incorporated v. Hartford Fire Insurance Company, et al.*, Case No. 3:20-cv-04466-VC (N.D. Cal.,  Oct. 15, 2020) Hearing Transcript (ECF No.41) at 25:13-18, attached hereto as Plaintiff's Request for Judicial Notice, Exhibit 5 ("Well, you've just heard my - - you just heard my comment - - right? - - is that, I mean, it seems like this whole thing is a fiction, that this whole lawsuit is based on a fiction that the reason you were shut down is because you had bad particles on the surface. And that's why - - you know, that's not why you were shut down."); *See also Mortar & Pestle Corp. d/b/a Olea Restaurant v. Atain Specialty Insurance Company a/k/a Atain Insurance Company,* Case No. 3:20-cv-03461-MMC (N. D. Cal., May 21, 2020), Sept. 11, 2020  Hearing Transcript, ECF No. 30 at 34:8-12, attached hereto as Plaintiff's Request for Judicial Notice, Exhibit 1. ("We are all operating under the same potential of virus-contaminated surfaces. Every time one of us goes out and touches anything and comes back and puts our hands on a surface, there may be virus.); *See also Social Life Magazine, Inc. v. Sentinel Ins. Co. Lmtd.*, Case No. 1:20-cv-03311 (S.D.N.Y., May 14, 2020), ECF No. 24-1 at 5:3-4, attached hereto as Plaintiff's Request for Judicial Notice, Exhibit 2. (The Court: "It damages lungs. It doesn't damage printing presses.")

protection to the insured, while exclusions are interpreted narrowly and against the insurer. *Shade Foods, Inc., v. Innovative Products Sales*, 78 Cal.App.4th 847, 867 (2000); *Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 808 (1982). As argued before, if a policy provision is capable *of two or more reasonable interpretations*, it is considered ambiguous. *Stamm Theatres, Inc., v. Hartford Casualty Ins. Co*, 93 Cal.App.4th 531, 538 (2001). (emphasis added). The Court must resolve ambiguities against an insurance company and in favor of the insured. *Reserve Ins. Co.,* 30 Cal.3d at 807-808.

To further illustrate this principle, the 9th Circuit Court in *Manzarek* held that an insurer must defend its insured "if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or *if the complaint might be amended to give rise to a liability that would be covered under the policy."* *Manzarek*, 539 F.3d at 1032, citing *Montrose Chem Corp. v. Superior Court*, 861 P.2d 1153 (1993) (emphasis added). Indeed, the Court may even consider facts outside of the complaint, when they reveal a *possibility* that the claim may be covered by the policy (emphasis added). *Id.*

## IV. ARGUMENT.

The Court should deny Hartford's Motion to Dismiss under 12(b)(6) at this stage for multiple compelling reasons. First, Hartford is litigating the same insurance policy language in *Mostre Exhibits LLC. v. Sentinel Ins. Co.*, Case No. 3:20-cv-01332 (S.D. Cal. Jul. 14, 2020). If this Court were now to dismiss the TAC and deny Founder the right to litigate this policy against Hartford, the end result would be that an identical dispute with the identical Policy gives rise to Hartford answering it in one instance and prematurely gutting it in another. This cannot possibly be what *Twombly* and *Iqbal* contemplated.

Second, contrary to suggestions made by this Court and the court in *HealthNOW Medical Center, Inc. v. State Farm Gen. Ins. Co.,* Case No. 4:20-cv-04340-HSG (N.D. Cal., Dec. 10, 2020) ("*HealthNOW"*), the numerous dismissals to date do not require this Court to grant Hartford's Rule 12(b)(6) Motion. Most, if not all of the dismissals to date show courts stepping well beyond the bounds of *Twombly* and *Iqbal* or are factually distinguishable from this case.

Third, Founder has alleged that human droplets are the covered cause of loss under the Policy in a facially plausible consistent with *Twombly* and *Iqbal*. Specifically, the TAC alleges with overwhelming particularity and includes credible scientific evidence that: (i) human droplets are

distinguishable from virus particles and they are two separate physical materials (*See* TAC at 11:25-12:2, 12:12-24); (ii) the ordinances did not just target virus particles but were in fact targeting much more broadly human droplets and all the places said droplets could be found (*See id.* at 15:7-14, 17:9-12); and (iii) Hartford's Policy is silent on droplets (*Id.* at 10:25-11:2).

Fourth, to the extent there is a virus exclusion, it should not apply at this pleading stage because: (i) said exclusion does not apply to the human droplets on its face; (ii) giving operation to the virus exclusion renders the Policy illusory; and/or (iii) the ambiguities on the face of the purported exclusion and Policy should give rise to concurrent causation which can only be evaluated through discovery and expert testimony.

### A. Hartford's Decision to Answer *Mostre Exhibits LLC* while Gutting Founder is Inconsistent with the Underlying Policies of *Twombly* and *Iqbal*.

As it stands, there are two identical cases with identical policies, both against Sentinel, but with very different results. The Court should consider Hartford's current Motion to Dismiss in light of *Mostre Exhibits LLC* and should not decide Hartford's Motion in the present case in a vacuum. Indeed, the Supreme Court in *Twombly* made it expressly clear that heightened pleading standards serve an important public purpose of promoting justice and limiting frivolous or highly speculative litigation, and for district courts to act as a gatekeeper by using the plausibility standard to "weed out" groundless claims. *Twombly,* 500 U.S. at 544.

In *Mostre Exhibits LLC. v. Sentinel Ins. Co.*, Case No. 3:20-cv-01332 (S.D. Cal. Jul. 14, 2020), involving the identical policy language forms SS 00 07 07 05 and SS 40 97 07 05, Hartford filed its answer within one week of the complaint's filing date. *See* Plaintiff's Request for Judicial Notice, <u>Exhibit 3</u> (ECF Docket Entry for *Mostre Exhibits LLC)*. One has to reasonably assume that Sentinel did not choose to answer a frivolous lawsuit.

### B. There is no Binding Authority Requiring Dismissal of the Founder TAC, and Founder's Allegations are Novel and Scientifically Supported.

Both Hartford and the Court suggest supposed consensus across courts that there is no COVID-19 business insurance coverage for losses caused by ordinances and shutdowns required during the pandemic. Indeed, in a recent Northern District of California opinion, Judge Haywood Gilliam expressly adopted this Court's opinion (where this Court called Plaintiff's position frivolous and made statements

about its view of transmissibility, and quipped during the hearing that this is like calling a screwdriver a hammer, *see* Oct.15, 2020 Hearing Transcript (ECF No. 41), Exhibit 5 at 20:20-24) and expressly stated that, "In so doing, Plaintiff urges the Court to reject the analysis adopted by courts throughout the Ninth Circuit, and indeed across the country." *HealthNOW Medical Center, Inc. v. State Farm Gen. Ins. Co.,* Case No. 4:20-cv-04340-HSG, ECF No. 40 (attached hereto Plaintiff's Judicial Notice, Exhibit 4) at 3:3-5. However, this construction is misleading and incorrect, and it is unfortunate because Judge Gilliam relied on and adopted this Court's opinion and language in issuing the order in *HealthNOW*. In essence, courts across the country are propagating their own view of the facts rather than analyzing what is facially plausible in the allegations.

As one court pointed out in denying Hartford's Motion to dismiss, "there is no binding authority when it comes to COVID-19 virus exclusion interpretations." *See Urogynecology Specialists of Florida v. Sentinel Ins. Co. Ltd.*, 2020 WL5939172 (M.D. Fla. Sept. 24, 2020) at *6. Further, both this Court's prior ruling and the *HealthNOW* court's construction goes outside the proper standard of facial plausibility under *Twombly* and *Iqbal*, and the Court (and other courts) are dangerously injecting their decisions to dismiss with their own scientific understanding and assumptions in granting motions to dismiss across the country. The Court and Hartford may have a legal opinion about the distinction between human droplets and virus particles as alleged, but Plaintiff submits respectfully that it is not for any Court to make scientific determinations or call those distinctions frivolous at this point. Discovery should be allowed, and expert testimony permitted.

It should also be noted that the *HealthNOW* court does not correctly cite and misstates Plaintiff's pleadings. Against the backdrop of this Court's caustic opinion, the *HealthNOW* court selectively quotes Plaintiff's TAC and opposition brief, quoting phrases to give the impression that "even Plaintiff's opposition" concedes it was the virus. This is simply not correct. A careful reading of the brief and the TAC does not say that at all—in fact, it states that although the goal of the ordinances may have been to eradicate the virus, the means chosen overshot and went after all droplets—hence the draconian shutdown orders seen in the early pandemic. This is stated expressly in the TAC and the previous opposition brief to which the *HealthNOW* court cites. TAC at 19:8-13; *See also HealthNOW Medical Center, Inc. v. State Farm Gen. Ins. Co.,* Case No. 4:20-cv-04340-HSG, ECF No. 40.

Other cases in the supposed wave of defendant favorable decisions are fraught with subjective judgments by the Courts that depart substantially from *Twombly* and *Iqbal* standards, or are factually distinguishable from this matter because direct loss was not plead at all or was based solely on loss of use. See e.g., *Diesel Barbershop, LLC. v. State Farm Lloyds,* 2020 WL 4724305, at *5 (W.D. Tex. Aug 13, 2020) (Motion at 1, 7, 12); *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, 20-258-CB-C30 (Mich. Cir. Ct., Ingham City) (Motion at 6, 13), (alleging that the virus exclusion did not apply because the virus was not present in their properties); *Rose's 1, LLC. v. Erie Ins. Exch.*, No 2020 CA 002424B (D.C. Super Ct., Aug. 6, 2020) (alleging that a governmental edict, standing alone, constitutes a direct physical loss under an insurance policy); *Social Life Magazine, Inc. v. Sentinel Ins. Co.,* 1:20-cv-3311 (S.D.N.Y., May 14, 2020) (alleging the loss of use of their printing equipment as the cause of loss that triggers coverage); *Turek Enterprises, Inc. v. State Farm Mutual Automobile Insurance Co.*, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020) (failing to allege accidental direct physical loss or damage to the property and instead plead that the government order was the sole cause of its losses)

As such, Plaintiff respectfully submits that there is no applicable consensus of the Ninth Circuit, or for that matter any Circuit (since to Plaintiff's knowledge no appellate opinions have been issued yet)—there are only discordant district court level opinions, many of which are dangerously departing from *Twombly* and *Iqbal* or which are clearly factually distinguishable.

**C.  Plaintiff's Allegations of Human Droplets as a Covered Cause of Loss is Facially Plausible Under *Twombly* and *Iqbal*.**

In view of the Policy language and relevant case law, under the *Twombly* and *Iqbal* facially plausible standard, Plaintiff's allegations satisfy the direct physical loss or physical damage requirement for a Covered Cause of Loss. The expanded allegations under the TAC should now more than suffice to satisfy the facially plausible standard, and the Court should follow these well-established pleading standards.

**1.  The Distinction Between Human Droplets and Virus Particles Have Been Plead in Sufficient Detail to Meet the Facially Plausible Standard of *Twombly* and *Iqbal,* and this Distinction is Novel and Distinguishable from Other COVID-19 Case Decisions.**

Plaintiff's TAC alleged that it is the human droplets, and not virus particles, that caused the physical damage or loss to Founder's premises that is covered under Hartford's policy. TAC at 11:25-12:11. The Court rejected this view in granting Hartford's 12(b)(6) Motion to the SAC, and even went

so far as to dismiss this as a "fiction." (Hearing Transcript at 25:13-18, Oct. 15, 2020, ECF No. 41). In this instance, the Court did not correctly apply the *Twombly* and *Iqbal* standard as to whether the human droplet allegations are facially plausible, and did not follow the 12(b)(6) standard set forth in *Manzarek* to accept all the factual pleadings in the complaint as true and construe the pleadings in the light most favorable to the plaintiff. Instead, the Court incorrectly characterized that "Founder seeks to wriggle out the exclusion by attaching a different label to its loss." ECF No. 40 at 1. Founder's allegations of human droplets as the cause of direct physical loss is a good faith, novel argument soundly grounded on scientific evidence. It was extensively plead in the SAC, and is now overwhelmingly and compellingly plead in the TAC. *See* TAC at 11:25-12:2, 12:12-24, Fn. 2-8. Contrary to Hartford's characterization of Plaintiff's human droplet allegations as a "creative attempt" to "plead around" the exclusion, which is how Judge Wilson described the plaintiff's pleading in *10E, LLC v. Travelers Indemnity Co. of Connecticut,* 2:20-cv-04418-SVW-AS, 2020 WL 5095587, at *5 (C. D. Cal. Sept. 2, 2020), and this Court's own characterization that the human droplets are fiction, the human droplets allegations are fully supported by findings of credible scientific sources. Indeed, as plead, the TAC has provided citations to credible and authoritative scientific sources, including WHO, the CDC, NIMH, and other peer-reviewed health research institutes like Proceedings of the National Academy of Sciences of the United States of America ("PNAS"), and these sources have extensively published the physiological and physical distinctions between the virus and droplets. TAC at Fn. 2, 3, and 4. As such, the TAC has alleged more than enough detail to show that human droplets play a significant role in COVID-19 transmission, and those human droplets (whether they contain the virus particle or not) are hazardous as a result. TAC at 17:1-12.

To the extent that Founder's allegations in the TAC are facially plausible under *Twombly* and *Iqbal*, and not "fiction" or a "creative attempt" to plead around the exclusions, the Court needs to accept the allegations as true and construe the pleadings in light most favorable to Founder.

## 2. Hartford's Policy's "Risk of Physical Loss" Requirement as Plead Covers Human Droplets.

The Hartford Policy, as plead in the TAC, provides for coverage (under a section entitled "COVERAGE") as follows:

We will pay for **direct physical loss of** or **physical damage** [emphasis added] to the Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from a **Covered Cause of Loss** [emphasis added].

(TAC at 7:22-28)

The All-Risk Policy further defines Covered Cause of Loss as follows:

**3. Covered Causes of Loss**
**RISKS OF DIRECT PHYSICAL LOSS** [emphasis added] unless the loss is:
a. Excluded in Section B., EXCLUSIONS; or
b. Limited in Paragraph A.4. Limitations; that follow.

(TAC at 8:1-6)

As previously discussed, it is notable that the "Covered Cause of Loss" is "further" defined as "***risk*** [emphasis added] of direct physical loss."[7] Covered Cause of Loss, as defined, is then used to define the requirements for Business Income loss coverage due to the Covered Cause of Loss or due to Civil Authority, both block- quoted in the TAC at 8:8-9:5 and 9:7-15. On its face, applying the pleading standards set forth by *Twombly* and *Iqbal*, it is facially plausible for human droplets to be a Covered Cause of Loss under the policy language.

### 3. The Legal Standard for Interpreting the Direct Physical Loss Requirement Favors Founder.

Hartford's main argument in defending their COVID-19 cases is that, in order to establish "a direct physical loss of" property, Plaintiff must allege "a distinct, demonstrable, physical alteration of the property" or "a physical change in the condition of the property, i.e., it must have been 'damaged' within the common understanding of the term." Motion at 12:20-22, quoting *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010). However, this rigid,

---

[7] On its face, the coverage language is ambiguous. On the one hand, Covered Cause of Loss is for "risk of direct physical loss" but on the other hand the coverage section states that "we will pay for direct physical loss or physical damage." Such ambiguities must be resolved against an insurance company and in favor of the insured. See *Reserve Ins. Co.,* 30 Cal.3d at 807-808. The use of the word "risk" would suggest to the insured that the policy does not necessarily require actual damage, but that risk of damage (i.e. risk of virus damage or droplet damage, rather than actual damage) may be sufficient. In this case, it is moot as the TAC pleads actual damage from droplets and/or virus particles. TAC at 18:13-21; 19:8-13.

draconian interpretation has been rejected by California Courts as being too broad. Just recently, the Northern District of California rejected this interpretation of *MRI Healthcare Center* in *Mudpie, Inc. v. Travelers Casualty Insurance Company of America,* 20-cv-03213-JST, 2020 WL 5525171 (N.D. Cal. 2020) ("*Mudpie*"), citing to *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:17-cv-04908-AB-KSx), 2018 WL 3829767, at *3-4 ("*Total Intermodal*"). Both the *Mudpie* and *Intermodal* courts concluded that the phrase "direct physical loss ***to***" in *MRI Healthcare Center* should be construed differently than "direct physical loss ***of***" in order to properly apply the bedrock principle that every word be given a meaning. *Mudpie,* 2020 WL 5525171 at *4,  quoting *Total Intermodal,* 2018 WL 3829767, at *4. The Court in *Mudpie* reasoned that "to interpret 'physical loss of' as requiring 'damage to' would render meaningless the 'or damage to' portion of the same clause, thereby violating a black-letter cannon of contract interpretation – that every word be given a meaning." *Mudpie,* 2020 WL 5525171 at *3. Thus, the *Mudpie* Court, applying *Total Intermodal*, found that the language of this provision, alone, does not require a "physical alteration of the property" or "a *physical change* in condition of the property." *Id.* Instead, the court in *Mudpie* held that there needs to be allegations of an intervening physical force which "made the premises uninhabitable or entirely unusable" in order to establish a "direct physical loss of property" under the policy. *See Mudpie at p. 7-8*; see also *Manpower Inc. v. Ins. Co. of the State of Pa.*, No. 08C0085, 2009 WL 3738099, at *6 (E.D. Wis. Nov. 3, 2009) (finding that the insured's inability to access its property was a direct physical loss where the loss "was caused by a physical event—the [building] collapse—which created a physical barrier between the insured and its property"); see also *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 5, 17 (W.Va. 1998) (finding that "[l]osses covered by the policy, including those rendering the insured property unusable or uninhabitable, may exist in the absence of structural damage to the insured property" when a rockfall made plaintiffs' homes uninhabitable); see also *Western Fire Insurance Co. v. First Presbyterian Church,* 165 Colo. 34, 437 P.2d 52, 54-55 (1968) (finding that the direct physical loss resulting from the 'accumulation of gasoline around and under the church building,' which made further use of the building highly dangerous when the insured, acting upon the orders of the fire department, closed the church building because gasoline had infiltrated the soil underneath it).

It is also not correct to say, axiomatically, that economic loss cannot constitute damage. Indeed, a more flexible and insured-protective approach to policy interpretation was adopted by the California Court of Appeal in *Thee Sombrero, Inc. v. Scottsdale Ins. Co.* when it noted that: "The correct principle, then is *not* that economic losses, by definition do not constitute property damage. [citations omitted] . . . Rather, the correct principle is that losses that are *exclusively* economic, without any accompanying physical damage or loss of use of tangible property, do not constitute property damage." *Thee Sombrero, Inc. v. Scottsdale Ins. Co.*, 28 Cal.App.5th 729, 739 (Cal. Ct. App. 2018).

This view seems to be supported by Hartford's policy itself. Indeed, the Hartford Policy provides the following definition for "Property Damage:"

> **b. Loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property** [emphasis added]. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

TAC, Exhibit A at p. 78.

It is well established California law that insurance contracts "must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." See *Bank of the W. v. Superior Court,* 2 Cal. 4th 1254, 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). As such, the previously cited definition of Covered Cause of Loss (see TAC at 8:3-6) and the discussion of direct physical loss or physical damage must be informed by this definition of property damage which permits "loss of use of tangible property that is not physically injured or destroyed." Applicable California case law supports this analysis as well. *See e.g.*, *Borg v. Transamerica Ins. Co.,* 47 Cal. App. 4th 448, 456–57, 54 Cal. Rptr. 2d 811, 816 (1996) (where the Court holds that loss of use may include loss of use of tangible property not otherwise physically damaged); see also *Hendrickson v. Zurich American Ins. Co. of Ill.,* 72 Cal. App. 4th 1084, 1090-1091 (1999) (where Court followed *Borg* in finding damage from loss of use of strawberry fields without actual physical damage); see also *Thee Sombrero, Inc. v. Scottsdale Ins. Co.*, 28 Cal. App. 5th 729, 736-738 (2018) (where the Court rejected the insurer's contention that an amendment to a Conditional Use Permit (CUP) was not a loss of use of tangible property as a result of a shooting in a nightclub and the Court observed, "If your leased apartment was rendered uninhabitable by some noxious stench, you

1   would conclude that you had lost the use of tangible property; and if a lawyer said no, actually you had

2   merely lost the use of your intangible lease, you would goggle in disbelief.")

3       Applying *Borg*, *Hendrickson*, *Thee Sombrero*, and other similar cases in California and other

4   jurisdictions, this Court may also find that Plaintiff satisfies the physical damage requirement by virtue

5   of the TAC pleadings which clearly state that as a result of the concern for droplets§ rendering physical

6   surfaces and enclosed spaces as sites for virus transmission, Plaintiff suffered the same kind of physical

7   damage or property damage by loss of use of its own premises. TAC at 6:13-18, 18:22-25.

8       Therefore, because Founder's TAC adequately pleads in a facially plausible manner under

9   *Twombly* and *Iqbal* the risk of direct physical loss sufficiently to trigger coverage under the Hartford

10  policy and with sufficient particularity to satisfy Rule 12(b)(6) and California insurance law standards,

11  the Court should deny Hartford's Motion to Dismiss.

12      **4.  Applying Applicable Law, Plaintiff Satisfies the Direct Physical Loss Requirements of
        the Hartford Policy.**

13      Consistent with the Northern District's recent ruling in *Mudpie* and recent application of *Western*

14  *Fire* in *Mudpie*, and consistent with *Total Intermodal*, *Manpower* and *Murray*, the TAC alleges physical

15  damage from either the droplets (which may or may not contain the virus) and/or from the virus particles

16  themselves. TAC at 11:25-12:2 (distinguishing between saliva droplets, respiratory droplets, and the

17  virus itself, all of which may be in the air or on surfaces and causing damage to the premises and

18  surrounding areas), 17:13-18:6 (droplets in air or on surfaces). The TAC pleads in great detail precisely

19  how droplets, which may or may not contain virus particles, can land on, alter, and occupy physical

20  surfaces, essentially altering the property of the surfaces. TAC at 12:3-13:28, Fn. 3, and 14:1-20, Fn. 4

21  (incorporated figure showing the various manners in which droplets and/or virus can damage surfaces

22  and the surrounding air). As noted above, the *HealthNOW* Court incorrectly characterized the SAC (and

23  thus the TAC) by stating that Plaintiff's own arguments concede that the virus is the primary cause of

24  loss. TAC at 19:8-13; *See also HealthNOW Medical Center, Inc. v. State Farm Gen. Ins. Co.,* Case No.

25  4:20-cv-04340-HSG, ECF No. 40, *supra.* That is simply not the case and is an inaccurate summary of

26  the TAC and our past opposition brief in that matter.

27      Regardless, out of an abundance of caution, to further illustrate and clarify the point, the TAC

28  expressly pleads that it is the presence of the human droplets and the perception of the droplets' harmful

potential to *carry* the virus, ***even though the virus may be only in a small fraction of the droplets***, that triggered the civil ordinances and/or caused damage at the scheduled premises or surrounding premises. TAC at 15:7-14 (tying droplet and virus damage to the orders limiting access to the scheduled premises), *id.* at 16:11-26 (connecting the virus or droplet damage to physical accessibility), *id.* at 17:1-12 (pleading in significant detail over several pages the risk of direct physical loss from asymptomatic individuals shedding droplets and/or virus particles, citing the WHO descriptions of the various modalities of damage through spread of droplets and resulting possible virus transmission (*id.* at 17:13-18:12), and specifically articulating the role of human beings in carrying the droplets from location to location and why the ordinances needed to control their travel, ingress and egress from properties and regions (*id.* at 19:8-13).

### 5. Hartford's Other Cited Authorities Are Inapposite, Distinguishable, and Should Not Be Relied Upon to Grant this Premature Rule 12(b)(6) Motion.

Hartford argues in its Motion that simply because "human droplets" make surfaces "essentially dirty," this is not a physical loss. Motion at 14:6-7. However, each of the cases cited by Hartford is distinguishable. For example, in *Mama Jo's, Inc. v. Sparta Insurance Co.*, No 18-12887, 2020 WL 4782369, at *1 (11th Cir. Aug. 18, 2020), the Court granted a motion to dismiss finding that dust and debris from nearby construction work did not constitute physical damage to scheduled premises. In view of the recent *Mudpie* decision, the Northern District would not find *Mama Jo's* persuasive as the Northern District has now stated that virus particles, transmitted through droplets, are "no less a physical force than the accumulation of gasoline in *Western Fire* or the ammonia release [which] physically transformed the air in [another case]." *Mudpie*, 2020 WL 5525171 at *5, FN 7. Defendant's citations to *Universal Image Productions, Inc. v. Federal Insurance Co.*, 475 F. App'x 569, 573 (6th Cir. 2012) (finding that mold and bacteria in a building did not amount to "direct physical loss") and *Mastellone v. Lightning Rod Mutual Insurance Co.*, 884 N.E.2d 1130, 1144 (Ohio App. 2008) (finding that mold staining did not constitute physical damage) are not dispositive here in light of the Northern District's recent analysis in *Mudpie*. Besides the fact that *Mudpie* now serves to clarify the Northern District's view on appropriate pleading of direct physical loss damage (which the Court never made to this point in this case), it is also worth noting that the purported damage from mold, bacteria, or mold staining in *Universal* and *Mastellone* did not result in actual loss of use, whereas in this case, the damage from

droplets (or risk of such damage) resulted in actual loss of access to the scheduled premises and surrounding areas as plead in the TAC.  See TAC at 19:14-18; see *infra* at Section IV(C-4).

Logically speaking, in this pandemic, human droplets are universally considered hazardous for one simple reason: there is no reliable way to determine whether any given human droplets contain the virus particles or not. TAC at 16:11-26. Human droplets containing virus particles are clearly very contagious and hazardous, while uninfected human droplets are simply "dirty" (in Hartford's dismissive description). *Id.* at 16:11-26, 19:1-7. However, as the TAC alleges, COVID-19 is unique in that there is no way to tell for the majority of people if someone is infected because of pre-symptomatic and asymptomatic cases where you have people who are contagious but show no symptoms. *Id*. at 16:11-26. As such, safety precautions in this pandemic (including government orders) are designed around the presumption that every human droplet might be potentially contagious, and therefore the government orders are designed to reduce the spread of human droplets and slow down COVID-19 transmission in doing so.

**D.  Hartford's Virus Exclusion Is Not A Blanket Exclusion, Is Deficient in Construction, And Does Not Cover Droplets.**

As is now plead in the TAC, the so-called virus exclusion in the Policy is actually part of a limited coverage description. TAC at 21:19-26, Ex. A at p. 124. It is notable that, as plead in the TAC, the declarations page did not alert Founder to the exclusion. As such, under *Haynes v. Farmers Ins. Exch.,* 32 Cal.4th 1198, 1206-1207 (2004), the exclusion language should not apply. If Hartford wanted to make the exclusion readily comprehensible and enforceable, it knew how to do so. See *S.A. Hospitality Group v. Hartford Fire Ins. Co*., Case No. 3:20-cv-01033-VLB (July 22, 2020, D. of Ct.) (The policy being litigated includes a clear exclusionary endorsement entitled "New York – Exclusion of Loss Due to Virus or Bacteria," attached to the TAC as Exhibit C); see also *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822 ("Because the insurer writes the policy, it is held 'responsible' for ambiguous policy language, which is therefore construed in favor of coverage."); see also *Tomaselli v. Transamerica* 25 Cal. App. 4th 1269, 1281-1282 (following authority such as *Fields v. Blue Shield of California* (1985) 163 Cal. App.3d 570 [209 Cal. Rptr. 781], stating that failure to use clear, conspicuous and plain language in a notification of reduction in policy coverage renders the reduction ineffective).  Against this backdrop, there is one aspect of exclusion analysis that does appear clear and

unambiguous—the policy does not exclude pandemics (as the court in *Urogynecology Specialist of Florida LLC* (WL5939172 at *6) found when analyzing the identical Sentinel policy language found in this case) and does not exclude human droplets.

### E. Hartford's Interpretation of Its Limited Virus Coverage to Exclude Coverage Renders the Limited Coverage Illusory.

Hartford's interpretation of the operative Policy provisions runs the risk of rendering important coverage provisions illusory, particularly when Hartford employs the language in the policy from the purported "Limited Virus Coverage Form" (Form SS 40 93 07 05). If Hartford's interpretation were to be accepted at face value, then the claimed Limited Virus Coverage would not apply to *any* virus whatsoever. Such an interpretation effectively, actively, and improperly renders the "Limited Virus Coverage" terms meaningless and manifestly illusory under California law: "An interpretation that would render the objectively reasonable expectations of the insured for coverage under the policy 'meaningless' is an example of an illusory coverage. Factors that may be considered in determining the existence of 'illusory coverage' are: (1) the business of the insured; and (2) the procedures of the insured in carrying on its business." See *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.,* supra, 78 Cal.App.4th at p. 874. Hartford argued in their brief that a mere possibility of some coverage is enough, citing *Secard Pools Inc. v. Kinsale Ins. Co,* 318 F. Supp. 3d 1147, 1153 (C.D. Cal. 2017). Hartford's argument is disingenuous for several reasons. First, Hartford's interpretation requires that the virus be caused by a "specified cause of loss," which is defined as meaning: "[f]ire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment, sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." Motion at 10:24-11:2. Here, as now expressly plead in the TAC at 26:7-28:15, the virus coverage is illusory because it is written in such a way that it gives Founder the "illusion" that the policy covers a risk that is not actually covered. Second, Hartford argued that the Virus Exclusion is conspicuous, plain, and clear. Motion at 12:1-10. However, the Limited Virus Coverage Form opaquely refers to some "specified cause of loss," is anything but "conspicuous, plain, and clear" and it is framed with a header implying coverage, not exclusion without a clear declarations page citation. *See* TAC at 25:1-5, citing *Haynes v. Farmers Ins. Exch.* (2004) 32 Cal.4th 1198,1208 (citations omitted) ("While the insurer has every right to sell insurance policies by methods of mechanization, and present-day

economic conditions may well justify such distribution, the insurer cannot then rely upon esoteric provisions to limit coverage. If it deals with the public upon a mass basis, the notice of noncoverage of the policy, in a situation in which the public may reasonably expect coverage, must be conspicuous, plain and clear.") Founder would have had to hunt elsewhere in the voluminous, 130-plus page policy, without any direction, in order to find any remotely meaningful definition of a "specified cause of loss." The absurdity of the notion that any of the specified causes would result in a loss caused by a virus renders the purported coverage virtually nonexistent.

Assuming – for argument's sake only – that the Limited Virus Coverage is not illusory, there are facially plausible arguments around the exclusion. As alleged in the TAC, the form does not define, address, or exclude losses or physical damage or alteration related to human droplets (either respiratory or saliva, both large and small). *Id*. at 9:18-23. Under California law, the Limited Virus Coverage Form needs to be interpreted narrowly and against the insurer. *Manzarek*, 519 F.3d at 1032, supra. As such, even with the exclusion, there are multiple conceivable scenarios, many of which would argue for coverage:[8]

    i.    Interpretation I (narrowest possible interpretation consistent with *Manzarek*): The Limited Virus Coverage Form language does not and cannot apply to human droplets and therefore is not applicable to the facts alleged by Founder;

    ii.    Interpretation II: Even if the Limited Virus Coverage Form applies indirectly to human droplets that contain virus particles, it still does not apply to human droplets that do not contain the virus, and therefore there is a covered cause of loss under the coverage and the Court should permit discovery and expert testimony on these issues; and concurrent causation.

    iii.    Interpretation III: That there is no distinction between human droplets and viruses, and even if human droplets are separate cause of the loss, it does not matter because ultimately the loss is caused by the COVID-19 pandemic.

---

[8] Founder has discussed the possible interpretations in great detail in its Opposition to Sentinel's 12(b)(6) Motion to the Second Amended Complaint. ECF No. 28 at 14:1-16:15.

PLAINTIFF'S OPPOSITION TO DEFENDANT SENTINEL INSURANCE COMPANY, LIMITED'S MOTION TO DISMISS
CASE NO.: 3:20-CV-04466-VC

If a policy provision is capable of two or more reasonable interpretations, then it is considered ambiguous. *Id*. Ambiguities must be resolved against an insurance company and in favor of the insured. *Reserve Ins. Co.*, 30 Cal.3d. at 807-808, supra.

### F.   There is a Competing Covered Cause of Loss (in the Form of Droplets) that Must be Analyzed Under California's Concurrent Causation Doctrine as a Triable Issue of Fact.

Assuming the Court has accepted what is now robustly plead in good faith in the TAC (i.e., human droplets are a covered cause of loss under *Twombly* and *Iqbal)*, then the concurrent and competing role of human droplets vs. virus particles must be analyzed under California's concurrent causation doctrine as a triable issue of fact and not something that can be disposed at the 12(b)(6) Motion stage.

Cal. Ins. Code § 532 provides, "[i]f a peril is specially excepted in a contract of insurance and there is a loss which would not have occurred but for such peril, such loss is thereby excepted even though the immediate cause of the loss was a peril which was not excepted." As such, efficient proximate cause analysis must be applied when a non-excluded peril and an excluded peril combine to cause a loss. In such cases, so long as the non-excluded peril is the "Efficient Proximate Cause," there is coverage for the loss. This is so even though an excluded peril concurrently contributed to producing the loss. The "Efficient Proximate Cause" is also referred to as the "Predominate Cause." Under *Sabella v. Wisler,* 59 Cal.2d 21, 31-32 (1963) and as further clarified in *Garvey v. State Farm,* 48 Cal.3d 395 (1989), the "Predominant Cause" is not automatically the "triggering" cause: "[I]n determining whether a loss is within an exception in a policy, where there is a concurrence of different causes, *the efficient cause – the one that sets others in motion – is the cause to which the loss is to be attributed*, though other causes may follow it, and operate more immediately in producing the disaster." *Sabella,* 59 Cal.2d 21 at 31-32. (Emphasis added).) Although the definition of "Predominant Cause" lacks precision, what is clear after *Garvey* is that the issue of efficient proximate causation is a question of fact for the jury. *Howell v. State Farm Fire Casualty Co.*, 218 Cal.App.3d 1446, 1459 (Cal. Ct. App. 1990), citing *Garvey*, 48 Cal.3d at 412-413, fn. 11.

Further, under California law, a virus exclusion clause that excludes coverage where the excluded peril "contributes in any way" to the loss may be deemed illusory because it "suggests [that] the insurer could deny coverage for a loss caused by 1% of an excluded peril and 99% by a covered

peril." *Julian v. Hartford Underwriter Ins. Co.*, 35 C4th 747, 759 (2005). In other words, denial of coverage where the excluded peril is only a remote cause of a loss caused by a combination of covered and excluded perils would circumvent the efficient proximate cause doctrine and thus violate Ins. Code §§ 530 and 532. *Id. at 759.*

Applying *Sabella*, *Garvey*, *Julian* and the progeny of cases which have historically applied California's statutorily required concurrent causation analysis, the concurrent causation analysis between human droplets and virus particles is a question of fact for the jury, and not something that can be disposed at the 12(b)(6) Motion to Dismiss stage. Indeed, the TAC has now amplified and articulated facially plausible allegations that the human droplets are (1) distinct from the virus particles (TAC at 12:12-24, 13:1-3, Fn. 3, and (2) the human droplets are what were being targeted, intentionally or effectively, by government stay-in-place orders to slow the spread of the disease. *Id.* at 19:14-18. The October 5, 2020 CDC web postings on the competing roles of droplets vs. viruses highlights this, and highlights the evolving understanding of the complex causation underlying the pandemic. *Id.* at 14:21-15:5.

**G.  Plaintiff Has Sufficiently Alleged Facts That Trigger Civil Authority Coverage by Alleging Human Droplets, With or Without Virus Particles, as a Covered Cause of Loss.**

Hartford, once again, in its brief, incorrectly surmised that the TAC tried to trigger the Civil Authority clause independently and shoehorn the language of the Civil Authority coverage to the Direct Physical Loss or Physical Damage requirement. Motion at 8:9-11. At this point, Hartford has either failed to follow the TAC's allegations, or it is gaslighting the TAC allegations. Once again, Hartford argues that Plaintiff is asserting that the governmental orders *by themselves* trigger coverage under the Policy. Motion at 8:6-12. This is simply incorrect. Reading the plain language of the Policy, the Civil Authority coverage extends coverage to a specific situation that would not otherwise be covered under the Policy. TAC at 9:7-8:5. The "extended" coverage applies when access to the premises insured by the Policy is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of the insured premises. *Id.*

Applying that language to the allegations in the TAC, Founder's human droplet allegations as the covered cause of loss has satisfied both requirements. First, the TAC alleges direct physical loss or physical damage due to human droplets at the surrounding property, which as discussed previously, is a

covered cause of loss. TAC at 18:17-25; see supra at Section IV-C. Second, the language of the Santa Clara County ordinance expressly prohibits access to Founder's headquarters, and the TAC pleads damage at the scheduled premises. *Id.* at 18:22-25, 19:8-18. Assuming these two factual allegations to be true, the TAC has alleged sufficient facts to show coverage under the Civil Authority clause. (*Franklin EWC, Inc. v. Hartford Fin. Servs, Inc.*, 2020 WL 5642483 (N.D. Cal. Sept. 22, 2020) is a distinguishable, non-binding Northern District of California Decision because the Plaintiff in Franklin did not allege direct physical damage or physical loss in their complaint to satisfy the requirements of the extended civil authority coverage).

### H.  Recent COVID-19 Decisions are Consistent with Founder's Position and Distinguishable from Founder's Allegations about Human Droplets.

Since Founder filed its TAC on November 5, 2020, there are other courts that have denied Rule 12(b)(6) motions to dismiss brought by insurers, further supporting Founder's position. *See*, e. g., *Elegant Massage, LLC v. State Farm Mutual Automobile Insurance Company*, Case No. 2:20-cv-00265-RAJ-LRL (E.D. Va., Dec. 9, 2020); *see* also *Independence Barbershop, LLC v. Twin City Fire Insurance Co.*, Case No. 1:20-cv-00555 (W.D. Tx., Nov. 4, 2020) (Twin City Fire Insurance Company is a subsidiary of Hartford, and involves the same Limited Fungi, Bacteria, or Virus Coverage Form (SS 40 93 07 05).

On the other hand, other cases cited by Hartford (including those that came down after the filing of the TAC) to support their motion to dismiss are distinguishable and inapposite to Founder's TAC for one simple reason: none of the cases cited have alleged human droplets as a covered cause of loss. *See, e. g.*, *Franklin EWC Inc. et al. v. Hartford Financial Services Group, et al.*, Case No. 3:20-cv-04434-JSC (N.D. Cal., Dec. 14, 2020); *see also Robert W. Fountain, Inc. et al v. Citizens Insurance Company of America*, Case No. 3:20-cv-05441 (N.D. Cal., Dec. 9, 2020); *see also Water Sports Kauai, Inc. v. Fireman's Fund Insurance Company et al,* Case No. 3:20-cv-03750 (N.D. Cal., Nov. 9, 2020).

### I.  Plaintiff Has Sufficiently Pled Factual Allegations for Each of Its Causes of Action to Survive the 12(b)(6) Motion.

Hartford's contention that each of Plaintiff's seven causes of action hinges on a finding of coverage is true. However, as argued above, questions of coverage cannot be adjudicated at the pleading

stage, and Plaintiff has sufficiently pled plausible facts to support each of the causes of action to survive Hartford's motion to dismiss.

### 1.   Counts 1 Through 4 – Breach of Contract and Declaratory Relief.

Hartford's sole attack on these causes of action is that all claims derive from the Policy, and if there is no coverage, there are no claims. Motion at 15:2-3. If the Court denies the Rule 12(b)(6) motion for the reasons set forth above, there is no other basis to dismiss Counts 1-4.

### 2.   Counts 5 – Unjust Enrichment.

Plaintiff has voluntarily dismissed Defendant Hartford Financial Services Group, and will agree to withdraw this cause of action with respect to Defendant Sentinel Insurance Company Limited.

### 3.   Counts 6 and 7 – Violation of Cal. Bus. & Prof. Code § 17200 (UCL) and Injunctive Relief Under § 17200.

Hartford's rapid denial of Plaintiff's claim violates California UCL laws. Specifically, Hartford's bad faith denial meets the definition of unfair business practice in the three recognized definitions of "unfair" under the UCL: (i) unfair, (ii) fraudulent, or (iii) unlawful. The TAC pleads conduct which fits all three categories of conduct. TAC at 37:14-40:11.A UCL action under California law is equitable in nature (see *Korea Supply Co. v. Lockheed Martin Corp,* 29 Cal. 4th 1134, 1144 (2003)), and the "remedies available in a UCL action are limited to injunctive relief and restitution," both of which are equitable remedies. *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (Cal. Ct. App. 2009). In addition, "it is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief," *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75-76 (1992).

Procedurally, the Court does not need to reach this issue until a later procedural juncture in the case, when there is more certainty as to whether the legal relief sought would, in fact, be "adequate." A number of other courts have declined to dismiss UCL claims by a plaintiff because there is no bar to the pursuit of alternative remedies at the pleadings stage. *Aberin v. Am. Honda Motor Co., Inc.*, 2018 U.S. Dist. LEXIS 49731, at *26 (N.D. Cal. Mar. 26, 2018). In *Adkins v. Comcast Corp*., 2017 U.S. Dist. LEXIS 137881 (N.D. Cal. Aug. 1, 2017), for example, the court noted that a "few federal courts seem to have decided that claims for equitable relief should be dismissed at the pleading stage if the plaintiff manages to state a claim for relief that carries a remedy at law," but declined to follow suit because the court was "aware of no basis in California or federal law for prohibiting the plaintiffs from pursuing

their equitable claims in the alternative to legal remedies at the pleadings stage." *Id.* at *7; *see also Vicuña v. Alexia Foods, Inc.*, 2012 U.S. Dist. LEXIS 59408 (N.D. Cal. Apr. 27, 2012) (observing that while a "claim for restitution is inconsistent and incompatible with a related claim for breach of contract or a claim in tort, at the pleading stage, a plaintiff is allowed to assert inconsistent theories of recovery."); *Deras v. Volkswagen Grp. of Am., Inc.*, 2018 U.S. Dist. LEXIS 83553, at *19 (N.D. Cal.May 17, 2018) (declining to dismiss UCL claim because plaintiff has adequate remedy at law on ground that there is "no bar to the pursuit of alternative remedies at the pleading stage.").

## V.  CONCLUSION

For the reasons stated above, Plaintiff requests that the Court deny Hartford's Motion to Dismiss for Failure to State a Claim. If the Court grants any part of the Motion in view of this evolving area of law and for the reasons set forth in this brief, the Court should grant with leave to amend.

DATED: December 17, 2020                    Respectfully Submitted by,

/s/ Sanjiv N. Singh

Sanjiv N. Singh, Esq.
SANJIV N. SINGH, A PROFESSIONAL LAW
CORPORATION

/s/ Michael B. Indrajana

Michael B. Indrajana
INDRAJANA LAW GROUP, A PROFESSIONAL
LAW CORPORATION

Attorneys for Plaintiff FOUNDER INSTITUTE
INCORPORATED.

PLAINTIFF'S OPPOSITION TO DEFENDANT SENTINEL INSURANCE COMPANY, LIMITED'S MOTION TO
DISMISS
CASE NO.: 3:20-CV-04466-VC