**STEPTOE & JOHNSON LLP**
Anthony J. Anscombe
State Bar No. 135883
aanscombe@steptoe.com
1 Market Plaza, Spear Tower, Suite 3900
San Francisco, CA  94105
Telephone:     (415) 365-6700
Facsimile:      (415) 365-6699

**STEPTOE & JOHNSON LLP**
Sarah D. Gordon, *admitted pro hac vice*
sgordon@steptoe.com
1330 Connecticut Ave NW
Washington, DC 20036
Telephone:     (202) 429-8005
Facsimile:      (202) 429-3902

**STEPTOE & JOHNSON LLP**
Melanie A. Ayerh, State Bar No. 303211
mayerh@steptoe.com
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071-3033
Telephone: (213) 439-9432
Facsimile: (213) 439-9599

*Attorneys for Defendant,*
SENTINEL INSURANCE COMPANY LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOUNDER INSTITUTE INCORPORATED, a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>HARTFORD FIRE INSURANCE COMPANY, a corporation doing business in California; SENTINEL INSURANCE COMPANY, LIMITED, a corporation doing business in California; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 3:20-cv-04466-VC<br><br>**SENTINEL INSURANCE COMPANY, LTD.'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:   January 21, 2021<br>Time: 10:00 a.m.<br>Courtroom:  4<br>Judge:  Honorable Vince Chhabria |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff's Opposition does nothing to save this action from dismissal. As demonstrated in the motion to dismiss of Sentinel Insurance Company, Limited ("Sentinel"), and as this Court has already held, Plaintiff's alleged business losses were caused by a virus—the novel coronavirus—and its property Policy unambiguously excludes such losses from coverage. *See* Dkt. No. 40 at 1 ("the claim clearly falls within the virus exclusion.") Plaintiff's Third Amended Complaint ("TAC") concedes that its losses were caused by a virus, *see, e.g.*, TAC ¶¶ 26-30, and Plaintiff's over-length Opposition does not dispute that. Plaintiff's losses are simply not covered.

First, Founder attempts to avoid the virus exclusion by making a distinction between the virus and the human droplets in which the virus is contained. *See* Dkt. No. 50 at 24.  But this Court and two additional courts in this District have now ruled that that is a distinction without a difference. *See* Dkt. No. 40 at 2 ("Founder has merely come up with a different way of describing the same thing"); *HealthNOW Med. Ctr., Inc. v. State Farm Gen. Ins. Co.*, 2020 WL 7260055, at *2 (N.D. Cal. Dec. 10, 2020) ( *"*[t]he stay-at-home ordinances plainly sought to prevent COVID-19—a virus—from spreading," and "[r]espiratory droplets are simply one mechanism through which the virus can spread."); *Karen Trinh, DDS, Inc. v. State Farm Gen. Ins. Co.*, 2020 WL 7696080, at *4 (N.D. Cal. Dec. 28, 2020) ("there is no meaningful difference between the virus itself and droplets that contain the virus.")  Human respiratory droplets are always present on property when people are present, and do not damage it. The reason Founder is closed is because some of those droplets may now contain a virus.

Second, Plaintiff argues that an exception to the virus exclusion applies for Limited Coverage. *See* Dkt. No. 50 at 24-25. But this Limited Coverage is only available if the virus results from certain specified causes of loss that do not exist here. *See* Dkt. No. 46 at 10-11. Plaintiff then claims that "Hartford's Interpretation" of the coverage in the Limited Virus Coverage is illusory because it "would not apply to *any* virus whatsoever" Dkt. No. 50 at 25. Plaintiff apparently seeks coverage under a Policy provision it simultaneously claims is

unenforceable. *Id*. The Limited Coverage is not illusory because there are instances in which such coverage could apply. This case is just not one of those instances.

Third, even if the Virus Exclusion did not apply, Founder still has no coverage because it cannot demonstrate direct physical loss or damage to property. Every Court in California that has addressed this issue has reached this conclusion. Founder never once identifies any "direct physical loss of or physical damage to" its property.  In fact, Founder never alleges that the virus was present on its property, only the "[t]he threat of the presence" of COVID-19 and human droplets. *See* TAC ¶¶ 43-44. Founder's focus on human droplets makes no sense.  If human droplets damage property, Founder's property would always be closed.

Finally, the "civil authority" coverage in the Policy does not apply.  The Virus Exclusion expressly applies to civil authority coverage. But, even if it did not, Founder cannot meet the requirements for this coverage: (1) access to its premises was not prohibited, (2) Founder does not allege any harm to any property, only that "human droplets" may be present at nearby property, and (3) the orders of civil authority were to limit the spread of coronavirus, not because of property damage.

In short, the TAC should be dismissed without leave to amend.[1]

## II.   **ARGUMENT**

### A.   **"Human Droplets" Have No Bearing on the Virus Exclusion**

Founder does not dispute that the Policy does not cover losses caused directly or indirectly by the "presence, growth, proliferation, spread or any activity" of a virus regardless of "whether or not the loss event results in widespread damage or affects a substantial area." Instead, just as it did in the SAC, Founder attempts to avoid the exclusion by arguing that its losses were caused by "saliva and/or respiratory droplets," not the coronavirus. Dkt No. 50. at 9.

Plaintiff's "droplet" theory makes no more sense this time than it did the last. Saliva and respiratory droplets do not cause direct physical loss or damage to property.  If such droplets are

---

[1] Plaintiff makes a preposterous argument that Sentinel's strategy in *Mostre Exhibits LLC* precludes a ruling on the 12(b)(6) motion. Sentinel's litigation strategy in other cases is none of Plaintiff's business, but, in addition to the many Rule 12(b)(6) motions it has filed, Sentinel will be filing other motions pursuant to Rules 12(c) and 56.

SENTINEL INS. CO. LTD.'S REPLY IN SUPPORT OF MOTION TO DISMISS

a risk now, it is **only** because they may contain a virus.  As Founder concedes, the [saliva] droplets spread disease only when the virus is present. *See, e.g.*, TAC ¶ *29* ("the human [saliva] droplets became a focus of concern because they can possibly carry the virus")); *Id*. at ¶ 41 ("transmission of COVID-19 is possible when respiratory secretions, droplets, or saliva are expelled…but only in cases where the droplets contain the pathogenic COVID-19 particles.")

Just last month, two courts in this District agreed with this Court's rejection of the droplet theory. In *Karen Trinh, DDS, Inc.*, 2020 WL 7696080, Plaintiff attempted to avoid dismissal by claiming that "respiratory droplets, not the virus itself, are "the real focus" of public health ordinances". *Id.* at *4. The court rejected that argument noting "that there is no meaningful difference between the virus itself and droplets that contain the virus." *Id*. "[B]ut-for COVID-19, the civil authority orders would not exist, and Plaintiff would not have lost business revenue, making the virus—an exclusion under the Policy—the efficient proximate cause of Plaintiff's losses." *Id*.  And in an almost identical COVID-19 business loss case, another court adopted this Court's reasoning and rejected a plaintiff's "droplet" theory: "the stay-at-home ordinances plainly sought to prevent COVID-19—a virus—from spreading," and "[r]espiratory droplets are simply one mechanism through which the virus can spread." *HealthNOW Med. Ctr., Inc.*, 2020 WL 7260055, at *2 (N.D. Cal. Dec. 10, 2020). Plaintiff's expansion on its droplet theory in the TAC does not change the fundamental fact that Founder's alleged losses resulted from the coronavirus.  No concurrent causation analysis is required, because there is only one cause of loss: the virus.

The efficient proximate cause doctrine does not save Founder's claims.  The efficient proximate cause doctrine provides a means to assess coverage when an insured's loss has two (or more) causes, at least one of which is covered by the policy and at least one of which is excluded. The Supreme Court of California has held:

> When a loss is caused by a combination of a covered and specifically excluded risks, the loss is covered if the covered risk was the efficient proximate cause of the loss, but the loss is not covered if the covered risk was only a remote cause of the loss, or the excluded risk was the efficient proximate, or predominant cause.

*Julian v. Hartford Underwriters Ins. Co.*, 35 Cal. 4th 747, 750 (Cal. 2005); *see also* Cal. Ins. Code § 530 (insurer is "not liable for a loss of which the peril insured against was only a remote cause"). "[T]he efficient proximate cause is 'the predominating' or 'most important cause of the loss.'" *Tento Int'l, Inc. v. State Farm Fire & Cas. Co.*, 222 F.3d 660 (9th Cir. 2000) (quoting *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 403, 406 (Cal. 1989) (en banc)). Put differently, the efficient cause is the "'one that sets others in motion, . . . though the other causes may follow it, and operate more immediately in producing the disaster.'" *Sabella v. Wisler*, 59 Cal. 2d 21, 31-32 (Cal. 1963) (quoting 6 Couch on Insurance § 1466 (1930)).

"[T]he proximate efficient cause doctrine applies only when two or more conceptually distinct perils combine to cause the loss." *Roberts v. Assur. Co. of Am.*, 163 Cal. App. 4th 1398, 1409 (Ct. App. 2008) (citations omitted). "When . . . the evidence shows the loss was in fact occasioned only by a single cause, albeit one susceptible to various characterizations, the efficient proximate cause analysis has no application." *Id.*; *see also Chadwick v. Fire Ins. Exch.*, 17 Cal. App. 4th 1112, 1118 (Ct. App. 1993) ("If every possible characterization of an action or event were counted an additional peril, the exclusions in all-risk insurance contracts would be largely meaningless.").

Here, respiratory droplets are not a cause of loss "conceptually distinct" from the virus.[2] The efficient proximate cause of Plaintiff's loss is the virus, not the human droplets. To conclude otherwise would "strain[] reason" and require "precisely the opposite" of the plain meaning of the virus exclusion. *See Atlas Assurance Co. v. McCombs Corp.*, 146 Cal. App. 3d 135, 149 (Cal. Ct. App. 1983). Such a result would effectively "rewrite" the Policy and improperly bind Sentinel "to a risk that it did not contemplate and for which it has not been paid." *Id.*[3]

_____

[2] *See Roberts v. Assur. Co. of Am.*, 163 Cal. App. 4th at 1408-10 (Ct. App. 2008) (insured could not avoid result of earth movement exclusion by characterizing cause as the developer's concealment of the ancient landslide); *Finn v. Continental Ins. Co.*, 218 Cal. App. 3d 69, 72 (Ct. App. 1990) (leakage and broken pipe were not two distinct or separate perils); *Chadwick v. Fire Ins. Exch.*, 17 Cal. App. 4th 1112, 1118 (insured could not avoid exclusion by describing the cause of loss as "builder negligence" that led to defective framing).

[3] Plaintiff cites to two out of state opinions that allegedly "support[] Founder's position," Dkt. No. 50 at 29, but does not attempt to explain how. In fact, they do not. *See*, *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 7249624, at *4 (E.D. Va. Dec. 9, 2020)

Contrary to Plaintiff's argument, dismissal on a Rule 12 motion is appropriate. *See, e.g.*, *Saprio v. Encompass Ins*., 2004 WL 2496090, at \*3 (N.D. Cal. Nov. 2, 2004) (granting motion to dismiss where court was required to "identify what is alleged to be the 'efficient proximate cause' of plaintiffs' loss"); *Loughney v. Allstate Ins. Co*., 465 F. Supp. 2d 1039 (S.D. Cal. 2006) (granting insurer judgment on the pleadings where plaintiff attempted to avoid dismissal by arguing exception to exclusion that would require causation analysis). The Plaintiff in *Franklin* raised this same argument – that causation should not be determined at the Rule 12 stage – but the Court disagreed and dismissed the Complaint. *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 2020 WL 7342687, at \*6-7 (N.D. Cal. Dec. 14, 2020).

**B.**    **The Limited Virus Coverage is Not Illusory; It Simply Does Not Apply Here**

Plaintiff argues that it is entitled to Limited Coverage, which is an exception to the Virus Exclusion. *See* TAC ¶ 64. But Plaintiff does not even attempt to satisfy the "specified cause of loss" requirement and instead argues the coverage is illusory. *See id.* ¶¶ 65-67; Dkt. No. 50 at 24-25. It seems to argue that, because it cannot show a "specified cause of loss," the Court should just ignore that requirement and provide it full coverage. It provides no support for this argument, and even if it could, it still cannot show a direct physical loss or damage as required for Limited Coverage.[4]

Plaintiff is wrong that the coverage is illusory. This Court, as well as the *Wilson*, *Franklin*, *Nahmad*, *Barroso* and *Natty Greene* courts have enforced an identical virus exclusion with the Limited Coverage language. *See Wilson v. Hartford Cas. Ins. Co.*, 2020 WL 5820800, at \*7, 9 (E.D. Pa. Sept. 30, 2020), appeal filed, (3d Cir. Oct. 20, 2020); *Franklin EWC, Inc.,* 2020 WL 5642483, at \*4-5; *Nahmad v. Hartford Cas. Ins. Co.,* 2020 WL 6392841, at \*9-10 (S.D. Fla.

---

(opinion explicitly hinged on the application of Virginia law); *Independence Barbershop, LLC v. Twin City Fire Ins. Co.*, 2020 WL6572428, at \*4 (W.D. Tex. Nov. 4, 2020) (applying Texas law and failing to consider how the Limited Coverage provision operates in the endorsement and the Policy as a whole, as required under California law).

[4] The Limited Coverage requires Plaintiff to demonstrate "[d]irect physical loss or direct physical damage to Covered Property caused by . . . virus." Dkt. No. 45-1 at 124. Every California District court to have addressed the issue has held that there is no direct physical loss for COVID-19 business interruption claims.

Nov. 2, 2020*); *Barroso, Inc. v. Twin City Fire Ins. Co.,* Civ. A. No. 1:20cv632 (E.D. Va. Nov. 10, 2020), ECF No. 39 (Order) (Supp. RJN Ex. 8); *id*, Hrg. Tr. at 16:14-20 (Dkt No. 46-2); *Natty Greene's Brewing Co., LLC v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 7024882, at *2, 3-4 (M.D.N.C. Nov. 30, 2020). Further, at least 10 other federal judges in California have relied on similar virus exclusions to dismiss COVID-19 claims.[5] Plaintiff does not cite a single case in which any court has found the Limited Coverage illusory.[6]

Plaintiff argues that the coverage is illusory because a virus cannot be the result of a specified cause of loss. *See, e.g.*, Dkt. No. 50 at 25. That is incorrect. There are conceivable scenarios in which a virus could result from a specified cause of loss.[7] That it may not be an everyday occurrence does not make the coverage illusory. It makes the coverage applicable – like all other coverages in the Policy – when a policy holder meets its burden to demonstrate an entitlement to it. As the party asserting an illusory coverage defense, Plaintiff bears the burden of demonstrating the Limited Coverage effectively precludes coverage for all reasonably anticipated risks. *See Secard Pools, Inc. v. Kinsale Ins. Co.*, 318 F. Supp. 3d 1147, 1153-54 (C.D. Cal. 2017). Plaintiff's allegations fall far short of that.

**C.** **Plaintiff's Remaining Arguments Regarding the Virus Exclusion Fail Too**

There is nothing wrong with an insurer limiting coverage by a valid endorsement that is

---

[5] *See*, Dkt. No. 46 at 16. *See also*, *Trinh, DDS, Inc.*, 2020 WL 7696080, at *3-4; *HealthNOW Med. Ctr., Inc.*, 2020 WL 7260055, at *2; *Robert W. Fountain, Inc. v. Citizens Ins. Co. of Am.*, 2020 WL 7247207, at *4-5 (N.D. Cal. Dec. 9, 2020); *Long Affair Carpet & Rug, Inc. v. Liberty Mut. Ins. Co.*, 2020 WL 6865774, at *3 (C.D. Cal. Nov. 12, 2020); *Palmdale Estates, Inc. v. Blackboard Ins. Co.*, 2021 WL 25048 at *3(N.D. Cal. Jan. 4, 2021).

[6] Plaintiff continues its misguided on *Urogynecology Specialist of Florida LLC* (WL5939172 at *6). "[T]he district court in that case did not cite anything—from the complaint or elsewhere— that would support a conclusion that a business shutdown due to a pandemic fall outside the scope of the virus exclusion." Dkt No. 40 at 2.

[7] *See, e.g.*, *Curtis O. Griees & Sons, Inc. v. Farm Bureau Ins. Co. of Nebraska*, 528 N.W.2d 329, 331 (Neb. 1995). The Curtis O. Griees court addressed losses associated with a windstorm – one of the specified causes of loss in Plaintiffs' Policy here – and a pseudorabies virus. *See Curtis O'Griees*, 528 N.W.2d at 331. The virus resulted from a windstorm because the covered property was livestock and the "virus was transmitted to plaintiff's farm by the windstorm" through the air. See id. The proximate cause of the loss was the windstorm that carried the virus because "[a]bsent the windstorm, there would have been no infection of plaintiff's swine." *Id*. at 333.

1  "conspicuous, plain and clear." *Esparza v. Burlington Ins. Co.*, 866 F. Supp. 3d 1185, 1201

2  (E.D. Cal. 2011) (citation and internal quotation marks omitted). As numerous California courts

3  have already held, the Policy language here meets that standard. *See Franklin*, 2020 WL

4  5642483, at *3; *Wilson*, 2020 WL 5820800, at *7. The Virus Exclusion is not buried in the

5  Policy as Plaintiff suggests (Dkt. No. 50 at 26). Rather, the endorsement and the exclusionary

6  language are the same size as all of the other text in the Policy and they are contained within a

7  bolded subheading. *See* Dkt. No. 45-1 at 123-124. There is nothing hidden about it.

8       Plaintiff also alludes to the doctrine of reasonable expectations. *See* Dkt. No. 50 at 25.

9  That doctrine does not apply here because the Policy is clear and unambiguous. *See Boxed Foods*

10  *Co., LLC v. Cal. Capital Ins. Co.,* 2020 WL 6271021 at *5 (N.D. Cal. Oct. 26, 2020) ("Because

11  the Virus Exclusion is unambiguous . . ., the Court does not evaluate the reasonable expectations

12  of the parties."). Plaintiff's argument is again nonsensical.  "LIMITED" coverage could not

13  plausibly have given Plaintiff the impression that it had coverage for all virus losses. The word

14  "LIMITED" should have put Plaintiff on notice that the Policy provides "LIMITED" coverage in

15  certain well-defined circumstances not present here. "An insurance company has the right to

16  limit the coverage of a policy issued by it and when it has done so, the plain language of the

17  limitation must be respected." *Franklin EWC, Inc.,* 2020 WL 5642483 at *4 (quoting *Nat'l Ins.*

18  *Underwriters v. Carter*, 17 Cal. 3d 380, 386 (1976)). The Limited Coverage does not apply.

19       **D.**   **Founder Experienced No Direct Physical Loss or Damage**

20       Founder's complaint should also be dismissed because it has not alleged direct physical

21  loss or damage to its property.   Every California district court to address this issue has decided

22  coronavirus business interruption claims do not allege direct physical loss or damage.[8] Nowhere

23  does Founder allege that anything physical has happened at its premises (or any premises

24

25  [8] *See,* Dkt. No. 46 at 22. *See, also, Geragos & Geragos Engine Co. No. 28, LLC v. Hartford Fire*

26  *Ins. Co.*, 2020 WL 7350413, at *3-4 (C.D. Cal. Dec. 3, 2020); *Palmdale Estates, Inc.,* 2021 WL 25048 (N.D. Cal. Jan. 4, 2021); *Steven Baker and Melania King d/b/a Chloe's Café v. Oregon*

27  *Mut. Ins. Co.*, 2021 WL 24841 (N.D. Cal. Jan. 4, 2021); *Oheb v. Travelers Cas. Ins. Co. of Am.,* 2020 WL 7769880, at *3-4 (C.D. Cal. Dec. 30, 2020); *Tralom, Inc. v. Beazley USA Servs., Inc.*,

28  No. 2:20-cv-08344-JFW (RAOx) (C.D. Cal. Dec. 29, 2020) at *8-10 (Supp. RJN Ex. 9); *Selane Prods., Inc. v. Cont'l Cas. Co.*, 2020 WL 7253378, at *4-6 (C.D. Cal. Nov. 24, 2020)

nearby). Founder never alleges the virus was present on its property. *See, e.g.*, *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 5525171, at *6 (N.D. Cal. Sept. 14, 2020). Rather, Founder alleges its loss is due to the "***threat*** of the presence of COVID-19 particles, or in the alternative, human droplets" on its property. TAC ¶¶ 43-44.  A "threat" of COVID-19 or "human droplets" does not demonstrate any physical alteration to the premises, as required by California law.

The Business Income coverage Founder seeks requires Founder to demonstrate both (1) a direct physical loss or damage to property ***and*** that the loss is (2) caused by or results from a risk of direct physical loss.  Risk alone is insufficient, contrary to Founder's assertions. *See* Dkt. No. 50 at 18-17.

The facts pled here are on all fours with the other California COVID-19 decisions. Founder, like the plaintiffs in *Mudpie*, *Pappy's*, *10E* and *Plan Check*, has not "lost" its property. Founder will regain the full use of its property whenever the COVID-19 governmental orders are lifted.[9] *See, e.g.*, *Mudpie*, 2020 WL 5525171, at *4; *10E, LLC v. Travelers Indem. Co. of Conn.*, 2020 WL 5359653, at *5 (C.D. Cal. Sept. 2, 2020). And, the policy in *Mudpie* – just like Founder's policy here – included a period of restoration that ended when the property "should be repaired, rebuilt or replaced."  *See id*. There, like here, "there is nothing to fix, replace, or even disinfect" for the insured "to regain occupancy of its property." *Mudpie*, 2020 WL 5525171, at *4.[10]

Founder nonetheless makes much of the *Mudpie* court's distinction between loss "of" property and loss or damage "to" property. *See* Dkt. No. 50 at 20. But that issue was not

---

[9] Founder continues to operate its business, albeit on a virtual platform. *See*, TAC ¶ 38 ("Founder was forced to … reinvent its business model to convert all of their [sic] program and curriculum they have been running in person … into an entirely virtual online platform.").

[10] A lopsided majority of courts across the country agree. *See, e.g. Nahmad*, 2020 WL 6392841, at *5-8; *Uncork & Create LLC v. Cincinnati Ins. Co.*, 2020 WL 6436948, at *5 (S.D. W.Va. Nov. 2, 2020); *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, 2020 WL 5938755, at *4 (N.D. Ga. Oct. 6, 2020); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*, 2020 WL 5791583, at *3 (M.D. Fla. Sept. 28, 2020); *Sandy Point Dental, PC v. Cincinnati Ins. Co.,* 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21, 2020)

1   dispositive in *Mudpie* and it should not be here either.  Furthermore, the other California federal

2   courts addressing COVID-19 claims have expressly rejected that argument. *See, e.g.*, *10E, LLC*,

3   2020 WL 5359653, at *5 (rejecting argument); *Pappy's Barber Shops, Inc.*, 2020 WL 5500221,

4   at *4 (adopting *10E* rationale).  "[S]ometimes the distinction between prepositions is important,

5   but . . . this case is not one of them." *See Plan Check*, 2020 WL 5742712, at *7. The argument

6   that "loss of" use is significant here "goes too far."  *Id.*

7          Founder cites the definition of "property damage" from the **Business Liability** Coverage

8   Form that it claims indicates "loss of use" is covered. *See* Dkt. No. 50 at 21. That definition has

9   nothing to do with the **Special Property** Coverage Form, pursuant to which Founder seeks to

10  recover in this case. *See* TAC at ¶ 23. Moreover, Founder provides no explanation for why the

11  definition of "property damage" under a liability coverage provides any insight into the meaning

12  of "direct physical loss" of property under the property policy. *Mudpie* rejected a similar attempt

13  to invoke a liability definition. *See Mudpie*, 2020 WL 5525171, at *6, n.8. There is ample

14  California authority expressly addressing the lack of direct physical loss. An unrelated, liability

15  definition of "property damage" provides no useful guidance.

16          **E.      Founder Is Not Entitled to Civil Authority Coverage**

17          Founder is not entitled to civil authority coverage.  As a threshold matter, the virus

18  exclusion applies to civil authority coverage. The civil authority provision pursuant to which

19  Founder hopes to recover is found at section "q." of the Special Property Coverage Form. *See*

20  Dkt. No. 45-1 at 39. The Virus Exclusion expressly applies to this section.  Section A.2 of the

21  "Limited Fungi, Bacteria and Virus Endorsement" provides: "The following exclusion [the Virus

22  Exclusion] is added to Paragraph B.1. Exclusions of the . . . Special Property Coverage Form."

23  *Id.* at 123. Moreover, the top of the virus endorsement expressly notes that it "modifies insurance

24  provided under the following: SPECIAL PROPERTY COVERAGE FORM." *Id.* Therefore, if

25  the Court concludes the exclusion applies, it need not even address civil authority coverage.

26          But even if the virus exclusion did not apply, Founder would not be entitled to civil

27  authority coverage.  As discussed above, Founder does not allege "direct physical loss" or "direct

28  physical damage" to its own property or property in the immediate area of its premises. Founder

also does not allege access to its premises has been specifically prohibited. *See* Dkt No. 45-1 at 30. To the contrary, Founder only alleges that the "Santa Clara Ordinance" required people to stay at home and off the streets and out of areas of public gatherings. *See, e.g.*, TAC ¶ 38. The TAC does not, however, allege that any order specifically prohibited **Founder** from accessing its places of business. *See, e.g.*, *Pappy's Barber Shops*, 2020 WL 5500221, at *1, *6 ("The government orders alleged in the complaint prohibit the operation of Plaintiff's business; they do not prohibit access to Plaintiffs' place of business."). Courts in this district have recognized that government action does not "prohibit" "access" merely because it places some restrictions on the insured's use of its premises or otherwise affects the profitability of its business.[11]

Finally, Founder admits that the orders of civil authority were not issued "as a result" of direct physical loss or damage to property. Founder expressly alleges that the orders were issued "to eliminat[e] the possible spread of virus." *See* TAC ¶ 39. In other words, Founder alleges the orders were issued to prevent or limit the *future* spread of the coronavirus, not as a result of existing direct physical loss or direct physical damage caused by the virus. *See id.* ¶¶ 34-37.[12]

Thus, the governmental orders were aimed at slowing the spread of the coronavirus, and do not trigger civil authority coverage.

## III.   CONCLUSION

Sentinel respectfully requests that the Court dismiss the TAC without leave to amend.

///

///

///

---

[11] *See Backroads Corp. v. Great N. Ins.*, 2005 WL 1866397, at *1 (N.D. Cal. Aug. 1, 2005); *Syufy Enters. v. The Home Ins. Co. of Indiana*, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995)

[12] Courts have routinely rejected civil authority claims where orders of civil authority are aimed at fear of future harm, not existing property loss or damage. *See*, *United Air Lines v. Insurance Co. of the State of Pennsylvania*, 439 F.3d 128, 134 (2d Cir. 2006); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, 2020 WL 886120, at *4 (D.S.C. Feb. 24, 2020); *Mudpie*, 2020 WL 5525171, at *7 (no civil authority coverage).

1

Dated: January 7, 2021

Respectfully submitted,

2

/s/ *Anthony J. Anscombe*
Anthony J. Anscombe
Sarah D. Gordon (*admitted pro hac vice*)
Melanie A. Ayerh

3

4

5

*Counsel for Sentinel Insurance Company, Limited*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SENTINEL INS. CO. LTD.'S REPLY IN SUPPORT OF MOTION TO DISMISS