# EXHIBIT 9

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES -- GENERAL

Case No.     **CV 20-8344-JFW(RAOx)**                                    Date:  December 29, 2020

Title:       Tralom, Inc. -v- Beazley USA Services, Inc.

---

**PRESENT:**

       **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| **Daisy Rojas** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**     **ATTORNEYS PRESENT FOR DEFENDANTS:**
              None                                                                  None

**PROCEEDINGS (IN CHAMBERS):**     ORDER GRANTING DEFENDANT BEAZLEY UNDERWRITING LIMITED'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
[filed 11/30/2020; Docket No. 20]

      On November 30, 2020, Defendant Beazley Underwriting Limited ("Beazley") filed a Motion to Dismiss Plaintiff's First Amended Complaint.  On December 14, 2020, Plaintiff Tralom, Inc. ("Plaintiff") filed its Opposition.  On December 21, 2020, Beazley filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.  The hearing calendared for January 4, 2021 is hereby vacated and the matter taken off calendar. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

      A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

      In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party.  *See, e.g.,*

*Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

For the reasons stated in Beazley's moving and reply papers, Beazley's Motion to Dismiss Plaintiff's First Amended Complaint is **GRANTED.** The Court signs, as modified, Beazley's Proposed Statement of Decision lodged with the Court on December 23, 2020 (Docket No. 26-1).[1]

IT IS SO ORDERED.

---

[1] In addition to the Court's granting of Beazley's motion on the merits, the Court also grants Beazley's Motion to Dismiss Plaintiff's First Amended Complaint due to Plaintiff's failure to comply with the Court's Standing Order. The Standing Order, filed on September 14, 2020 (Docket No. 8), provides in relevant part: "Within two days of the deadline for filing the Reply, each party shall lodge a Proposed Statement of Decision, which shall contain a statement of the relevant facts and applicable law with citations to case law and the record." Standing Order § 5(f). Plaintiff failed to timely file and still has not filed the required Proposed Statement of Decision. Pursuant to Local Rule 7-12, "[t]he failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion . . . ." In addition, the Standing Order expressly provides that the "[f]ailure to lodge the Proposed Statement will result in the denial or granting of the motion." Standing Order § 5(f). Accordingly, Beazley's Motion to Dismiss Plaintiff's First Amended Complaint is **GRANTED** due to Plaintiff's failure to file the Proposed Statement of Decision required by the Court's Standing Order.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRALOM, INC., dba THE RANCH AT LIVE OAK MALIBU, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>BEAZLEY USA SERVICES, INC., dba BEAZLEY INSURANCE SERVICES, a Delaware corporation; BEAZLEY UNDERWRITING LIMITED, a foreign corporation; and DOES 2 through 10, inclusive,<br><br>Defendants. | Case No. 2:20-CV-08344-JFW (RAOx)<br><br>**STATEMENT OF DECISION GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

# STATEMENT OF DECISION GRANTING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

On November 30, 2020, Defendant Beazley Underwriting Limited ("Beazley") filed a Motion to Dismiss Plaintiff Tralom, Inc.'s ("Tralom") First Amended Complaint in its entirety. (Dkt. 20.) On December 14, 2020, Tralom filed its Opposition. (Dkt. 23.) On December 21, 2020, Beazley filed a Reply in Support of its Motion to Dismiss. (Dkt. 25, 26.)

After considering the moving, opposing and reply papers, and the arguments set forth therein, the Court rules that Tralom failed to state a claim upon which relief can be granted and cannot establish the relief requested as a matter of law. As a result, the Court hereby dismisses Tralom's First Amended Complaint for failure to allege a plausible claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) without leave to amend.

## I. BACKGROUND

Tralom owns, operates, manages, and/or controls The Ranch at Live Oak Malibu ("the Ranch"), a health and wellness camp, with in-camp dining and accommodations located at 12220 Cotharin Road, Malibu, California in the County of Ventura. (FAC (Dkt. No. 11), ¶ 1.) Beazley subscribed to the Policy issued to Tralom, which provides coverage for direct physical loss of or damage to covered properties for the policy period of August 12, 2019 to August 12, 2020. (FAC, ¶ 32.) Beazley attached a copy of the Policy to its motion to dismiss. (Dkt. 20., Ex. 1.) The Policy provides the following coverages:

### A. Coverage

#### 1. Business Income

. . .
We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during

the "period of restoration". The "suspension" must be caused by ***direct physical loss of or damage to*** property at premises which are described in the Declarations [12220 Cotharin Road Malibu, CA 90265] and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

\*\*\*

### 4. Additional Coverages

**a. Expenses to Reduce Loss**
In the event of a covered loss of Business Income, we will pay necessary expenses you incur… to avoid further loss of Business Income.

**b. Civil Authority**
We will pay for the actual loss of Business Income you sustain caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss. This coverage begins 72 hours after the time of that action, and will apply for a period of up to three consecutive weeks from the date on which the coverage begins.

\*\*\*

### F. Definitions

. . .

3. The "Period of Restoration" means the period of time that:
a.  Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and
b.  Ends on the earlier of:
    (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
    (2) The date when business is resumed at a new permanent location.

(FAC, ¶¶ 34-35); (Dkt. 20., Ex. 1. at p. 49) (Policy's Business Income (Without Extra Expense) Coverage Form CP 00 32 04 02, §§ A.1; A.4; F.3) (emphasis added).

The Policy contains an exclusion entitled "Microorganism Exclusion (Absolute)" that provides the following:

> **MICROORGANISM EXCLUSION (ABSOLUTE)**
>
> This Policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to:
>     mold, mildew, fungus, spores or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.
> This Exclusion applies regardless whether there is (i) any physical loss or damage to Property Insured; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence; (iii) any loss of use, occupancy, or functionality; or (iv) any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

(Dkt. 20., Ex. 1. at p. 62).

On March 18, 2020, Tralom submitted a claim to Beazley seeking business interruption coverage for losses sustained as a result of state and local government orders requiring the temporary closure of its business operations (the "Claim"). (FAC, ¶ 37.) According to the FAC, the Ranch was shut down on March 19, 2020 "[a]s a result of the COVID-19 pandemic and government shutdown orders." (FAC, ¶ 25.) In its FAC, Tralom generally identifies a series of orders of civil authority relating to COVID-19, which Tralom claims impacted its business, including orders issued by Ventura County on March 17, 2020, Governor Newsom on March 19, 2020 and Los Angeles Mayor Eric Garcetti on March 19, 2020 (referred to herein as "Government Orders"). (FAC, ¶¶ 18-20.) In response to the Claim, Beazley sent

1 Tralom a denial letter wherein Beazley stated that no coverage existed for the
2 damages alleged to have been suffered by Tralom because there was no direct
3 physical loss of or damage to property and coverage was excluded under the
4 Microorganism Exclusion, among other reasons. (FAC, ¶ 38.)

5 On August 11, 2020, Tralom filed its initial complaint. (Dkt. 1.) On October
6 2, 2020, Tralom filed its First Amended Complaint ("FAC") seeking declaratory
7 judgment that Tralom's claimed businesses interruption losses were recoverable
8 under the Business Income provisions[1] and Civil Authority provision of its Insurance
9 Policy with Beazley (the "Policy"). (FAC, ¶¶ 48-49, 52.)

10 Beazley has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the
11 grounds that Tralom's FAC fails to allege a plausible claim upon which relief can be
12 granted.

13 **II.  LEGAL STANDARD**

14 A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of
15 the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion
16 to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted
17 as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556
18 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570
19 (2007)). Whether a claim is "plausible on its face" turns on whether the complaint
20 contains sufficient *factual* allegations to support a reasonable inference that the
21 conduct occurred. *See Iqbal*, 556 U.S. at 678. Further, "a plaintiff's obligation to
22 provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and
23 conclusions, and a formulaic recitation" of the elements of a cause of action.
24 *Twombly*, 550 U.S. at 555; *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (on a motion

---

[1] In its FAC, Tralom cites to the "Expenses to Reduce Loss" provision of the Policy, which provides that "[i]n the event of a covered loss of Business Income, we will pay necessary expenses you incur…to avoid further loss of Business Income. (FAC, ¶ 35.) For ease of reference, the Business Income coverage and Expenses to Reduce Loss coverage will be referred to herein as "Business Income provisions."

to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."). Further, the Court need not "accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwanted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010); *see also Transphase Sys. v. Southern California Edison*, 839 F. Supp. 711, 718 (C.D. Cal. 1993) (holding that the Court has no obligation "to accept as true conclusory allegations . . . or unreasonable inferences."). Dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6) when "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

**III. ANALYSIS**

Beazley argues in relevant part that the FAC should be dismissed because: (1) Tralom does not plausibly allege that it suffered "direct physical loss of or damage to property" as is required under the Policy's Business Income provisions; and (2) Tralom does not plausibly allege that the Government Orders were issued as a result of "direct physical loss of or damage to" property as is required under the Civil Authority provision.

**A. Tralom Has Failed to Allege Facts Demonstrating Its Entitlement to Coverage Under the Policy's Business Income Provisions.**

Under California law, "[p]hysical loss or damage occurs only when property undergoes a 'distinct, demonstrable, physical alteration.'" *See e.g., 10E, LLC v. Travelers Indemn. Co. of Connecticut*, No. 2:20-cv-04418-SVW-AS, 2020 WL 5359653, at *4 (C.D. Cal. Sept. 2, 2020) (quoting *MRI Healthcare Ctr. Of Glendale, Inc. v. State Farm Gen. Ins. Co*., 187 Cal. App. 4th 766, 779 (2010)). This standard is "met when an item of tangible property has been 'physically altered' by perils such as fire or water," but it is not satisfied "in instances when the structure of the property itself is unchanged to the naked eye and the insured claims its usefulness for its

normal purposes has been destroyed or reduced." *MRI Healthcare,* 187 Cal. App. 4th at 778-79; *see also Ward General Ins. Servs., Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548 (2003) (holding that a loss of valuable electronic data did not qualify as "direct physical loss or damage" without any physical alteration to the storage media.).

Importantly, [u]nder California law, losses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase." *10E,* 2020 WL 5359653, at *4. "Detrimental economic impact" will not suffice. *MRI Healthcare*, 187 Cal. App. 4th 779; "An insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage." *10E, LLC,* 2020 WL 5359653, at *5.

The Business Income provisions indicate that the requisite loss or damage must be physical in nature. In addition to the "direct physical loss of or damage to" requirement, the Business Income provision also provides that Business Income losses must be sustained during the "period of restoration," which begins on the date of damage and ends when the property at the described premises should be "repaired, rebuilt or replaced," or when the business is resumed at a new permanent location. (Dkt. 20., Ex. 1 at p. 7.) The "repair, rebuilt, or replaced" requirement shows that the loss of or damage to property be physical in nature. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-CV-03213-JST, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 14, 2020) (stating that the words "'[r]ebuild,' 'repair' and 'replace,' all strongly suggest that the damage contemplated by the Policy is physical in nature."); *West Coast Hotel Management, LLC v. Berkshire Hathaway Guard Insurance Companies*, No. 20-CV-05663-VAP, 2020 WL 6440037, at *3 (C.D. Cal. Oct. 27, 2020) (holding that "physical loss of or damage to property" plainly requires that the loss or damage be physical in nature, as is evidenced by the fact that the "Policy contemplates a 'period of restoration' after such loss or damage during which property is 'repaired,

rebuilt, or replaced.'").

### 1. The Government Orders Did Not Cause "Direct Physical Loss of" Tralom's Property

Beazley argues that the vast majority of California federal and state decisions addressing whether COVID-19 related orders could cause physical loss of or damage to property have unequivocally found that such orders cannot. *See e.g., Pappy's Barber Shops, Inc. v. Farmers Grp.*, Inc. No. 20-CV-907-CAB-BLM, 2020 WL 5500221, at *4 (S.D. Cal. Sept. 11, 2020) (holding that government orders forcing plaintiff's business to stop operating as a result of the COVID-19 pandemic did not constitute direct physical loss or damage to property); *Franklin EWC, Inc. v. Hartford Financial Services Group, Inc.*, No. 20-CV-4434-JSC, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020) (rejecting the insured's argument that the closure orders themselves caused direct physical loss to property); *West Coast Hotel Management*, 2020 WL 6440037, at *4 (holding that plaintiffs could not state a "legally cognizable claim" for the temporary loss of use of property because the loss of use of property due to executive orders constituted only detrimental economic impact and not physical loss of or damage to property.). The Court agrees. While the Government Orders temporarily restricted Tralom's ability to use its property for business purposes, the restrictions did not cause physical loss of or damage to property because they did not physically alter Tralom's tangible property. *See e.g., 10E, LLC*, 2020 WL 5359653, at *4.

Despite the established California precedent discussed above, Tralom argues that a "property's loss of use as intended is sufficient to constitute 'physical loss of property'" under the Policy. (Opp. at 3:14-17.) Like the insured in *10E, LLC*, 2020 WL 5359653, at *4. Tralom tries to distinguish "physical loss of" property and "damage to" property insisting that "loss" encompasses the impaired use of property. (*See Opp.* 9:14-17.). As such, Tralom argues that the Government Orders restricting

the use of Tralom's property resulted in "physical loss of" Tralom's property under the Policy's Business Income provision. (Opp. at 7:24-25.) In support, Tralom principally relies on *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, 2018 WL 3829767 (C.D. Cal. July 11, 2018).

*Intermodal* is inapposite, and Tralom's reliance on it is unavailing. *See e.g., Plan Check Downtown III, LLC*, 2020 WL 5742712 (C.D. Cal. Sept. 10, 2020) (distinguishing *Intermodal* from COVID-19 business closures); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Connecticut*, No. 2:20-CV-04423-AB, 2020 WL 5938689, at *4 (C.D. Cal. Oct. 2, 2020) ("to the extent Plaintiff relies on this Court's order in *Total Intermodal* for the proposition that "direct physical loss of" encompasses deprivation of property without physical change in the condition of the property [], the Court notes that such an interpretation of any insurance policy would be without any "manageable bounds." (internal citation omitted).) First, California federal and state courts have applied the "physical alteration" standard where the underlying policy required "physical loss of or damage to property" in the COVID-19 context. *Selane Products, Inc. v. Continental Cas. Co.*, No. 20-CV-07834-MCS, 2020 WL 7253378, at *5 (C.D. Cal. Nov. 24, 2020) (discussing cases).

Second, *Intermodal* only applies to those situations where there is "permanent dispossession" of tangible property. *See e.g., Mudpie,* 2020 WL 5525171, at *4 (N.D. Cal. Sept. 14, 2020) (holding that "although Mudpie has been dispossessed of its storefront, it will not be a 'permanent dispossession'" because "[w]hen the Stay at Home orders are lifted, Mudpie can regain possession of its storefront. Mudpie's physical storefront has not been 'misplaced' or become 'unrecoverable,' and neither has its inventory."); *Robert W. Fountain, Inc., et al., v. Citizens Ins. Co. of America*, No. 20-CV-05441-CRB, 2020 WL 7247207, at *4 (N.D. Cal. Dec. 9, 2020) (holding that "'loss of property' contemplates that the property is unrecoverable" and that "temporary dispossession is inadequate.").

Here, Tralom does not allege in the FAC that it was permanently dispossessed, or even dispossessed, of its property. (*See generally,* FAC.) Moreover, Tralom's FAC alleges that it resumed business operations on July 6, 2020. (FAC, ¶ 25.) Thus, even assuming the Policy covered "permanent dispossession" in addition to physical alteration, the temporary loss of use of property does not constitute "direct physical loss of property" under *Intermodal.*

### 2. The Virus Did Not Cause "Direct Physical Loss of or Damage to" Any Property

Tralom also alleges in the FAC that COVID-19 caused "direct physical damage and loss" to the "immediate area in and around Plaintiff's business" because it "adhere[s] to surfaces."[2] (FAC, ¶ 39.) These wholly conclusory allegations do not establish "direct physical loss of or damage to" Tralom's property as required by the Policy. *West Coast Hotel Management, LLC*, 2020 WL 6440037, at *4 ("generic statements regarding the physical nature of COVID- 19" insufficient to show direct physical loss or damage). Furthermore, nothing in the FAC supports a reasonable inference that the virus physically altered its property.

Even assuming the truth of these wholly conclusory allegations, Tralom cannot allege a plausible claim for relief because "the presence of the virus itself, or of individuals infected the virus, at [p]laintiffs' business premises or elsewhere do not constitute direct physical losses of or damage to property." *Pappy's,* 2020 WL 5847570, at *1; *Uncork & Create LLC v. Cincinnati Ins. Co.,* No. 2:20-CV-00401, 2020 WL 6436948, at *5 (S.D.W. Va. Nov. 2, 2020) (holding that the presence of the virus is not sufficient to trigger coverage for physical loss of or damage to property because "even when present, COVID-19 does not threaten the inanimate

---

[2] Notably, in its Opposition, Tralom concedes that COVID-19 "do[es] not inflict structural damage against the property." (Opposition at 11:20-22 (ECF No.23.))

structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant."). Similarly, there is no physical loss of or damage to property where the virus can be eliminated by cleaning the surface of property. *Uncork,* 2020 WL 6436948, at *5 (holding that the actual presence of the COVID-19 virus on property would not be sufficient to trigger coverage for physical loss or damage because the virus can be eliminated from surfaces with routine cleaning); *cf. Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020). As such, the presence of the virus does not cause direct physical loss of or damage to property as a matter of law.

Finally, as Beazley argues in its Motion to Dismiss, the Policy's Business Income provision requires that the suspension of the insured's operations be caused by direct physical loss of or damage to property. It is evident from Tralom's own allegations that it believes the Government Orders, not the alleged presence of the virus at the Ranch, led Tralom to temporarily cease its operations and suffer financial losses. (*See* FAC, ¶ 36. "As a result of the 'stay at home' orders, The Ranch was forced to close its doors . . . .")

The Court concludes that Tralom has not alleged facts plausibly demonstrating that it is entitled to coverage under the Policy's Business Income and Expense to Reduce Loss provisions. Unable to establish direct physical loss of or damage to property as a result of the virus or Government Orders, Tralom cannot establish coverage under the Business Income provisions.

**B.     Tralom Has Failed to Allege Facts Demonstrating Its Entitlement to Civil Authority Coverage**

The Civil Authority provision provides coverage for Business Income loss that is "caused by action of civil authority that prohibits access to the described premises ***due to direct physical loss of or damage to property***, other than at the described premises" caused by a covered cause of loss. (Dkt. 20, Ex. 1 at p. 44 (emphasis

added).) To establish coverage, the FAC must allege that the Government Orders were issued *due to* direct physical loss of or damage to property other than at the described premises.

For the same reasons discussed above, Tralom has not alleged sufficient facts to establish "direct physical loss of or damage to property." Tralom generally alleges that "the government closure orders which directly affected Plaintiff were issued due to the "proliferation of COVID-19 onto virtually every surface and object in, on and around The Ranch and its surrounding environment." (FAC, ¶ 39.) "At most, the FAC points to a mere possibility" of the presence of the virus, which is insufficient. *10E, LLC,* 2020 WL 5359653 at *5*. Further, as stated above, the presence of the virus does not cause direct physical loss of or damage to property as a matter of law.

Unable to allege any physical loss of or damage to property, Tralom necessarily fails to plausibly allege that the Government Orders were issued as a result of physical loss of or damage to property. *See, e.g., Syufy Enters. v. Homes Ins. Co. of Indiana*, No. 94-0756 FMS, 1995 WL 129229, at *2 n.1 (N.D. Cal. Mar. 21, 1995) (finding that curfews were not imposed following the Rodney King riots "because of damage to adjacent property" but instead "to prevent 'potential' looting, rioting, and resulting property damage," and therefore theater owner was not entitled to civil authority coverage for financial losses sustained when it closed theaters). In its Opposition, Tralom suggests that the Government Orders satisfy the "physical loss of or damage to property" requirement of the Civil Authority provision. (Opp., 11:25-12:3.) But the Government Orders cannot be both the cause of the physical loss and the result of the physical loss. *See Franklin EWC, Inc. v. Hartford Fin. Svs. Grp., Inc.*, 2020 WL 5642483 at *2 (stating, "the Closure Orders cannot have been issued as a result of the Closure Orders"). In addition, the FAC makes clear that the Government Orders were issued to enforce social distancing and for the prevention of the spread of disease and not because of the physical alteration of property. (*See,* FAC, ¶ 16.)

As such, Tralom's FAC fails to sufficiently allege the requisite causal link between prior physical loss of or damage to property and the subsequent issuance of the Government Orders.

## IV. CONCLUSION

For the foregoing reasons, Beazley's motion to dismiss is **GRANTED.** The Court concludes that there is no coverage under the Policy's Business Income provisions because there was no physical loss of or damage to property. In addition, the Court concludes that there is no coverage under the Policy's Civil Authority provision because the Government Orders were not issued as a result of direct physical loss of or damage to property.[3]

Although the Court recognizes that this Circuit has a liberal policy favoring amendments and that leave to amend should be freely granted, the Court is not required to grant leave to amend if the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile."). Tralom fails to indicate that it can allege any additional facts that would support coverage under the Policy. Accordingly, because it would be an exercise in futility, the Court denies Tralom leave to amend. The FAC is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

DATED: December 29, 2020

_____
Hon. John F. Walter
United States District Judge

---

[3] The Court finds it unnecessary to address Beazley's remaining arguments for dismissal.